## PAGE v. MILLER.

**1. WHEN A VERDICT FOR THE DEFENDANT WILL BE SET ASIDE AS NOT SUSTAINED BY SUFFICIENT EVIDENCE.**

If, in an action to recover damages for an alleged false imprisonment, caused by the defendant having had the plaintiff arrested on a charge of larceny, the evidence shows that the plaintiff, in taking the property alleged to have been stolen, was acting fairly, openly and honestly in taking such property; that he was taking it as an officer of a private corporation, under the direction of the president thereof, and under color of title to the property in such corporation; that the defendant, either prior to, or at the time of, procuring such arrest to be made, knew these facts, and purposely and wrongfully and without reasonable or lawful excuse, caused such arrest to be made; and that the plaintiff was acquitted on such charge, a verdict rendered in favor of the defendant, under such circumstances, is not sustained by sufficient evidence, and should be set aside.

**2. ADVICE OF COUNSEL NOT A FULL DEFENSE.**

If, in such an action, under such circumstances, the party causing the arrest, is advised by counsel that he has a case, such fact is not a full defense, but only goes to the mitigation of damages.

HAYNES, J. (orally.)

In this case a petition in error is filed for the purpose of reversing the judgment of the court of common pleas. The plaintiff below is the plaintiff here. The suit was brought to recover damages for an alleged false imprison-

ment, and the petition sets out in substance that the defendant, Miller, had caused the arrest of Page for larceny, and made other and proper averments to make a case for false imprisonment. The defendant, admitting the arrest, trial and discharge of defendant upon that trial, practically denies the other averments of the petition. The case proceeded to trial in the court of common pleas, was heard upon the evidence, and was submitted to the jury under what is admitted on all hands to be a very able, clear and impartial charge of the law by the court. Thereupon the jury returned a verdict for the defendant. A motion for a new trial was made upon the ground, among other things, that the verdict was not sustained by sufficient evidence and that being overruled, and judgment being rendered in favor of the defendant, the petition in error is prosecuted here.

The facts of the case are substantially these: The defendant, Miller, and H. M. Claflin, who resided in Cleveland, were either co-partners or jointly engaged in taking contracts in this city for paving streets and work of that kind. A contract being let for the paving of St. Clair street, an arrangement was made between Claflin and Miller upon one part, and John Streicher upon the other, whereby Claflin and Miller were to furnish the stone for that work, and were to have certain of the profits. The stone was to be furnished on board cars in Orleans county, in the state of New York, was to be Medina stone from Albion county, where the Medina stone quarries are situated. That work proceeded, and was carried forward to completion, and had been finished for some time, and other work had been carried forward during that time or about that time, by Claflin and Miller. Finally Claflin and Miller had disagreed about matters, and a petition was filed in the court of common pleas of this county to wind up their partnership affairs, and a receiver was appointed, being Col. Bunker, of this city, to take possession of the assets and to hold them subject to the order of the court. This was in February of a certain year. A list of all the property that was owned by the Claflin and Miller interest was sent forward by Claflin to Col. Bunker, and Col. Bunker taking that list, together with Miller, went through the city looking up the property that was upon the list, and the property that belonged to the firm of Claflin and Miller. There was left at the time that the work was done in St. Clair street, quite a quantity of stone said to have been rejected—stone that Streicher refused to receive—and that was piled up upon a certain lot on Orange street in this city, and amounted to several car loads. That remained there from February of that year until October of the same year.

About that time the plaintiff, who resided in Cleveland, and who is secretary of the Albion Stone company, came here and went to Col. Bunker, and stated to him that he was the secretary of the Albion Stone company, from Cleveland; that he was sent here by Mr. Claflin, who was the president of that company— being the same Mr. Claflin who was also of the firm of Claflin and Miller—to take these stone that were rejected; that they belonged to the Albion Stone Co., and that the company desired to use them or to sell them. He wanted to know if the receiver made claim to them in any manner or form, or had any objection to his taking them. The receiver said that he didn't know about them, but that he would look into the matter. Thereupon, Mr. Page returned to Cleveland, and came back here again in a few days, and called upon Col. Bunker, and the latter told him he had been looking into the matter somewhat. If I remember right, he didn't give Mr. Page a final answer at that time, and he again returned to Cleveland, and came back in a few days, and the Colonel then told him that he should not interfere at all with his taking the stone—that he made no claim to them in fact, but that if he took them he would not give his consent to taking them, but Page would take them at his own peril; he didn't make any objection to his taking them, as receiver. Thereupon Page proceeded to make arrangements for cars to take them to Cleveland, and not being able to obtain cars at that time, which was early in the week, he arranged for cars later in the week, at which time he again returned here, having also made arrangements for teams with the Moreton Truck company. He proceeded to have the stone loaded and placed on

board cars, and he had worked a day or more when the events occurred of which complaint is made.

It would seem that during this time, in the course of conversation or inquiries, that Col. Bunker had spoken with Mr. Miller about the matter, and at some time during that time and before the arrest, as I understand it, had said to Mr. Miller—meeting him perhaps at the Boody House—that he had concluded not to interfere with the removal of those stones.

After Page had loaded stone about a day, perhaps on the second day, and when he had got nearly two carloads loaded, Mr. Miller appeared at the point where the stone were piled up on Orange street, and inquired of Mr. Page what he was doing with the stone. He told him that he was removing the stone. Miller asked him who for. Page told him that he was removing them by the order of the president of the Albion Stone company; that the stone belonged to the Albion Stone company and that he had been directed to have them loaded and was proceeding to do it. Thereupon Mr. Miller told him that they belonged to Claflin and Miller, and not to move them, and Mr. Page replied that he could not take any orders from Mr. Miller in the matter, and if he objected to having them removed, he would have to take some legal steps to stop it; that the stone belonged to the Albion Stone company, and that he was proceeding by the orders of the president of that company to take them for that company. This was perhaps about three o'clock in the afternoon.

Thereupon Mr. Miller proceeded to the office of the clerk of the police court and asked for a warrant for the arrest of Mr. Page, and the clerk told him he would have to see the police prosecutor. The police prosecutor being engaged in a trial, Miller waited there sometime, he thinks nearly an hour, and the prosecutor being dis ngaged, he went into his room and stated what he wanted, but instead of stating to the prosecutor the whole of the facts, he told him that Claflin and Miller had some stone on Orange street, and a man by the name of Page was taking them away, claiming that they belonged to the Albion Stone company, and that he wanted to stop him. Miller says that the police prosecutor told him he would have to make an affidavit. Thereupon he filled out an affidavit, in which affidavit he alleged that the stone belonged to Miller, saying nothing about Claflin. Upon that a warrant was issued, and forthwith placed in the hands of the officer. Miller went to his office, he being at that time city engineer. He remained there during the afternoon, went to supper at the Boody House, he boarding at the Boody House, where Page was also stopping at the time. There they met and passed without speaking, but Page was seen by Miller and Miller was seen by Page. There is some divergence in the testimony after that, but Miller claims that he afterwards saw Kruse, one of the police officers, a detective so called, at his office in the Masonic building, about half past nine in the evening, and claims to have had a conversation with him in which he told him not to arrest the man, or need not arrest him. Miller claims also that early in the evening he telephoned to Captain O'Dwyer, at the police station, that if this man Page was arrested that it would not be necessary to take anything more than his own bond or recognizance. Thereupon O'Dwyer proceeded to go out into the country somewhere, and said nothing to anybody about it, and carried the information on the subject with him.

Kruse testified that he was up and had conversation with Miller at the hotel, but he places it earlier in the evening. Be that as it may, Kruse didn't have the writ, but was with the man that did have it, and at about ten o'clock in the evening, Page having been all the evening at the hotel, engaged in writing at one of the tables in the vestibule of the hotel, the officers came in and told him they wanted to see him, and took him out into the hall and declared him under arrest for grand larceny. Page told the officers he wanted to see his attorney. They said no, he must go to the station, and took charge of him. They then proceeded with him to the station. He told them that they need not take hold of him, that he should not run away. They then marched down there. Page was not a

very large man. He went to the station with an officer on each side of him. After he got down there he was allowed to send out a communication to his counsel, Pratt & Wilson. They proceeded to the station, but the officers could not take any bail. It should be said in passing that they said they could not postpone the arrest of the man; the writ was in their hands and it must be executed. Thereupon, Mr. Pratt proceeded to the residence of the police judge, got him up and got the amount of the bail fixed, proceeded to the residence of the clerk of the police court and thence to the office of the clerk, and finally got a bond executed about half past one o'clock in the morning, and obtained the release of Mr. Page who went back to the hotel.

The next morning Mr. Page appeared at the police court, with his counsel, to have the matter disposed of. The complainant said he was not ready, that he wanted the testimony of John Streicher, who was out of the city. It appears incidentally that John Streicher was here pretty much all of the time. Finally, on the 15th, the case came to a hearing, the defendant was discharged, and that ended the prosecution, so far as that was concerned.

It also appears from the testimony, that Mr. Miller, at the time that he was at the stone pile in the afternoon, did not consult with any counsel, or go to any of the parties who were interested, but took the matter into his own hands and proceeded immediately to the police court for the purpose of getting out a warrant.

Exactly why this writ was delayed so long in its execution, does not appear. The testimony shows that the writ was issued somewhere about four o'clock in the afternoon, and immediately placed in the hands of these officers. Mr. Page was stopping at that time at the Boody House, as Mr. Miller knew, and had been but a short time before left by Mr. Miller at this point on Orange street at the stone pile. About six o'clock, Mr. Page proceeded to the hotel, and remained there until ten o'clock, when he was arrested, not going out, except after supper going across the street to the postoffice, to deposit some letters, returning immediately. For some unexplained reason, the execution of the writ was delayed until ten o'clock, long after the office of the clerk had been closed, and he was taken down to the police station to look out for himself as best he could in the way of getting bail.

As I have said, the charge was very full, very clear, and very able. The court gave this definition of larceny:

Now a brief definition of larceny, which was the charge made in this case, is this: It is the wrongful taking of the personal property of another person without the owner's consent, and with the intent to deprive the owner of it. I give you this definition of larceny, so that you may know what the charge is that was made in this case, and consider it in connection with the evidence as to the conduct of defendant, and in connection with the evidence as to what he knew, or by the use of reasonable care and diligence might have known. In this case, if the jury find that Page, the plaintiff, in taking this property, was acting fairly, openly and honestly in taking this property, as an officer of the Albion Stone company, under directions from the president of that company, under color of title to the property in the same company, then he could not be held guilty of larceny for such taking; and if Miller, the defendant, before or at the time of his arrest, knew these facts—that is, if he knew that Page was acting openly and fairly and honestly in taking the property, as an officer of the Albion Stone company, under the directions of the president of that company, under color of title to the property—then he was not justified in making a charge of larceny against Page, and the jury should find that he made the charge without probable cause.

In regard to the ownership of the stone, in addition to what has already been stated, it was shown that at the time that the contract was taken for furnishing these stone, an arrangement was made between Streicher and Miller and Claflin, by written contract, whereby Miller and Claflin were to furnish Medina

stone from Albion county; that soon after Claflin, as president of the Claflin company or as a member of the firm of Claflin & Miller, arranged with the Albion Stone company that they should furnish the stone, practically assigning that part of the contract to them for a certain consideration—perhaps a portion of the profits—and they were to furnish the stone here in Toledo. The stone, in the ordinary course of business, was shipped by the Albion Stone company from Albion, N. Y., consigned to John Claflin, Toledo. Mr. Streicher received the stone here, and as the stone were received he used them, or such as were fit and proper to go into the street, rejecting the others, which constituted the stone which were in the pile in controversy. No assignment had ever been made of those stone from the Albion Stone company to Claflin and Miller or to any one. Miller testifies that he never heard of this assignment until he saw the assignment at the trial before the police judge at the time of the hearing upon this warrant of arrest. It was shown, however, that a draft had been drawn upon Streicher by the Albion Stone company, payable to the order of John R. Miller and indorsed by John R. Miller, showing that the stone were being furnished by the Albion Stone company, and that they were drawing for the price of the stone, and that Miller had knowledge of that from the fact that he had indorsed the draft. That draft was in existence at the time of the trial in the court of common pleas, but has since been lost.

The court charged, in addition, upon the question as to whether the want of probable cause would be sufficient to entitle the jury to find that the action of the defendant below was malicious; and as a definition of the law of malice, he stated to the jury that "Malice must be shown as well as a want of probable cause. Malice in a legal sense, means any wrongful act done purposely, and without a reasonable or lawful excuse, to the injury of another. And a prosecution on a criminal charge, which is brought under such circumstances, is malicious. And a prosecution is malicious when it is begun or set on foot from any improper motive."

Now it will be noticed in the testimony that Mr. Miller, at the time that the property of the firm of Miller & Claflin was taken into possession by the receiver, went with the receiver for the purpose of identifying the firm property; that he at no time claimed, or pointed out, or showed to the receiver that these stones were the property of Claflin & Miller. They were not included in the list of the firm property which Mr. Claflin had furnished to the receiver, so that attention was called to it at the time, and no claim was made of its being firm property. It is shown that when Mr. Page came here and was talking about taking this property, that Miller knew that the matter was being discussed as to whether the receiver should make any objection to it. He was informed by the receiver that he didn't consider it as firm property and would have nothing to do with it. It is shown that at the time Page went to work he was notified that the stone were being taken by Mr. Page as secretary of the Albion Stone company under the directions of the president of the Albion Stone company; that the stone were owned by the Albion Stone company, and that they were being shipped for and on account of the Albion Stone company to Cleveland; that they were a large quantity in bulk, and that the work was going on openly and publicly, and was being done in the regular and usual and ordinary course of business; also that Mr. Page had exercised great care to avoid any conflict, if there was or was likely to be any, with the receiver.

On this state of facts, the verdict was, as I have said, for defendant. We know not, of course, on what grounds the jury based their verdict; possibly on the ground of want of malice. We are unable to see, however, under the charge of the court and under the facts of the case, how they could have found that there was probable cause. They should have found want of probable cause, under the definition here given of malice—that is to say, that the act done by Miller was done wrongfully. There is no question about that. The stone were not the stone either of Miller or of Claflin. They belonged to the Albion Stone company, and

they were being taken by the agent of the Albion Stone company, under the direction of the Albion Stone company. In no sense whatever was there any larceny being committed by Mr. Page or the Albion Stone company. Mr. Miller took the responsibility of causing this man to be arrested for larceny, charging him with a crime that is a felony—causing him to be arrested and to be taken to the police station as a person who had committed a heinous offense, and when he arrived there the officers refused him to be admitted to bail or to allow him to depart on his own recognizance, or anything of that kind, because it was a felony that he was charged with; he was to be treated as a felon, and he was treated as a felon. Clearly there was a gross violation of the rights of Mr. Page, and a violation that was, on the part of Miller, in our judgment, reckless, and without any proper regard of the rights of Mr. Page, or of the facts of the case. When he received this notice, before he took any steps of the kind that he did, he should have made further inquiries and learned something more about the matter, but he chose, evidently for the purpose of intimidating Mr. Page, to arrest him for the crime of larceny. We think that the verdict of the jury under these circumstances is wrong and clearly wrong.

It is said here, and claimed, that he took the advice of counsel—took the advice of the city attorney. But the testimony, we think, very clearly shows that he never went to the police prosecutor for the purpose of taking any advice of him, or to any other counsel, only to get a writ. He went to the clerk to get a writ, and the clerk refused to issue the warrant until he was directed by the prosecutor, and when he came to make the statement to the prosecutor, he merely stated such facts as were necessary to draw an affidavit; that the property was owned by Claflin & Miller, and was being taken by Mr. Page, and shipped out of the city—stolen, in fact, and on that the affidavit was drawn and signed by Miller. We are unable to see that there is in that statement any element of defense for Mr. Miller, under the circumstances. We think, therefore, that the verdict of the jury in this case is not sustained by sufficient evidence, and for that reason the judgment of the court of common pleas is reversed, the judgment set aside, at the costs of defendant in error, and the case remanded for further proceedings according to law.

It is urged that this question has been passed upon by the court of common pleas. While we have great respect for the judgment of the court of common pleas at all times, and endeavor always to treat it with deference, nevertheless, when a case comes to this court, and the question is upon the facts of the case, it is our duty to examine those facts, and if in our judgment the verdict is not sustained by sufficient evidence, to so declare it, as we have in this case.

*Pratt & Wilson*, for Plaintiff in Error.

*Kinney & Newton*, and *S. Brophy*, for Defendant in Error.