CRISS ET AL., APPELLANTS, *v.* SPRINGFIELD TOWNSHIP ET AL., APPELLEES.

[Cite as Criss v. Springfield Twp. (1990), 56 Ohio St. 3d 82.]

(No. 89-1528—Submitted October 3, 1990—Decided December 12, 1990.)

*Grisi & Riegler* and *Charles E. Grisi,* for appellants.

*Nukes & Perantinides Co., L.P.A.,*

*Paul G. Perantinides, Elizabeth B. Manning* and *Samuel G. Casolari, Jr.,* for appellees Springfield Township Police Department, Carl Frank Blasdel and Daniel Lance.

*John O. McIntyre, Jr.* and *Linda Tucci Teodosio,* for appellee Myra Criss.

H. BROWN, J. For the reasons which follow, we affirm the judgment of the court of appeals and remand the cause for a new trial.

The primary issue is whether polygraph tests given to witnesses by police officers during the course of a criminal investigation should be admissible to show the officer's state of mind where the officer is the defendant in a malicious prosecution action. Our analysis begins with a discussion of the essential nature of the tort of malicious prosecution.

The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions. *Trussell* v. *General Motors Corp.* (1990), 53 Ohio St. 3d 142, 144, 559 N.E. 2d 732, 734; *Pope* v. *Pollock* (1889), 46 Ohio St. 367, 368-371, 21 N.E. 356, 356-357; Prosser & Keeton, The Law of Torts (5 Ed. 1984) 870, Section 119 ("Prosser"). We recently clarified the elements of a claim of malicious criminal prosecution in *Trussell, supra.* In order to prevail the plaintiff must prove the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Id.*

The requirement of malice turns directly on the defendant's state of mind. Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances

from which the law will infer an evil intent. Black's Law Dictionary (6 Ed. 1990) 956. See, also, *Page* v. *Miller* (1895), 13 Ohio C.C. 663, 669, 6 Ohio C.D. 676, 680; *Adams* v. *State* (1910), 11 Ohio N.P.(N.S.) 11, 13, 25 Ohio Dec. 77, 79; *Skarbinski* v. *Henry H. Krause Co.* (C.A. 6, 1967), 378 F. 2d 656, 658; *Brown* v. *Monticello State Bank* (Iowa 1984), 360 N.W. 2d 81, 87; *Eaves* v. *Broad River Elec. Coop., Inc.* (1982), 277 S.C. 475, 479, 289 S.E. 2d 414, 416. For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice. *Black's, supra*; Prosser, *supra*, at 883, Section 119; *Hickland* v. *Endee* (D.C.N.Y. 1983), 574 F. Supp. 770, 778; *Sanders* v. *Daniel Internatl. Corp.* (Mo. 1984), 682 S.W. 2d 803, 807; *Chittenden Trust Co.* v. *Marshall* (1986), 146 Vt. 543, 550, 507 A. 2d 965, 970.

The finder of fact, in evaluating a decision to prosecute, needs to know the basis upon which the decision was made. If the basis for prosecution cannot be shown, those who made the decision will appear to have acted with no basis — that is, maliciously. Frequently a police investigation will uncover evidence which may not be admissible in a criminal trial. Yet that inadmissible evidence can and often should be evaluated in deciding whether to prosecute. Examples include the results of a faulty search and seizure, hearsay, technically flawed confessions, and witness statements. Though not admissible in the criminal trial, such evidence may have relevance in showing whether the decision to prosecute was undertaken maliciously.

With this background, we turn to the specific question of whether the trial judge erred in excluding the polygraph examinations and any mention of their results in the present case. As a general rule, polygraph evidence is not admissible at trial absent a stipulation of the parties. *State* v. *Souel* (1978), 53 Ohio St. 2d 123, 7 O.O. 3d 207, 372 N.E. 2d 1318; *Brown* v. *Best Products Co.* (1985), 18 Ohio St. 3d 32, 18 OBR 69, 479 N.E. 2d 852.

In *Souel, supra,* this court adopted procedural safeguards as a prerequisite to the admission of polygraph evidence in a criminal trial for purposes of impeachment or corroboration. We did so because the reliability and accuracy of polygraph examinations are open to question.[1] Appellants urge that because appellees did not

---

[1] The procedures we adopted in *Souel* were as follows: (1) a written stipulation signed by the parties and providing for defendant's submission to the test and its subsequent admission at trial, (2) the right of the opposing party to cross-examine the polygraph examiner regarding his or her qualifications, the conditions under which it was administered, and the possibility of error, and (3) a limiting instruction to the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which the defendant is charged and that the jury should determine the weight and effect of his testimony. In addition to these procedures we determined that the admission of the test results is subject to the discretion of the trial court, who may refuse to accept the polygraph evidence if he is not convinced of the examiner's qualifications or the conditions under which the test was conducted. *Id.* We adopted these requirements in order to "insure control over what is generally recognized as the single most important variable affecting the accuracy of the polygraph test results, *viz.*[,] the polygraph examiner." *Id.* at 133, 7 O.O. 3d at 212, 372 N.E. 2d at 1323. With this procedural foundation in place, we determined that the polygraph results would have a probative value in determining whether an examinee

follow the requirements established in *Souel,* the polygraph evidence must be excluded in the case before us.

We disagree. The circumstances of the present case are distinguishable from *Souel.* In *Souel* a criminal defendant requested a polygraph examination after pleading not guilty to charges of aggravated murder and aggravated robbery. *Id.* at 124, 7 O.O. 3d at 207, 372 N.E. 2d at 1319. Although he had signed a written stipulation agreeing to its admission, prior to trial the defendant moved to suppress the results of his polygraph. *Id.* at 124-125, 7 O.O. 3d at 207-208, 372 N.E. 2d at 1319-1320. In contrast to *Souel,* the circumstances here do not involve a proceeding in which polygraph test results are being offered for the purpose of corroborating or impeaching testimony at trial. Instead, the police officers in the instant case seek to defend against a claim of malicious prosecution by presenting the jury with evidence of the investigation they conducted and the information they had before them when they decided to prosecute. The ultimate issue is the state of mind of the police officers in their determination of probable cause to prosecute Gary and Everett Criss. Thus, the concern we expressed in *Souel* is not present here. Although the case law is scant, the Supreme Court of Kentucky has drawn the same distinction and has come to the same conclusion. *Holdaway Drugs, Inc.* v. *Braden* (Ky. 1979), 582 S.W. 2d 646, 650.

Appellants also contend that our decision in *Brown* v. *Best Products Co.* (1985), 18 Ohio St. 3d 32, 18 OBR 69, 479 N.E. 2d 852, stands for the proposition that, in a claim of malicious prosecution, polygraph test evidence is not admissible to show malice or state of mind in the initiation or continuation of criminal prosecutions, in the absence of a stipulation between the parties.[2] Upon comparison of the facts in the present case with those in *Brown,* we find significant differences.

*Brown* involved a claim of conspiracy to maliciously prosecute and falsely imprison, in which the plaintiff attempted to introduce her own polygraph test results, in which she had maintained her innocence, as proof of the defendant's malice in pursuing criminal charges against her. *Id.* at 35, 18 OBR at 73, 479 N.E. 2d at 856. As in *Souel,* the difference between *Brown* and the case at bar is that in *Brown* a party attempted introduction of her own polygraph test results to buttress the truth of her testimony at trial. Here, Officers Blasdel and Lance sought to introduce polygraph evidence to show that the determination of probable cause to prosecute was based upon something more than spite or whim. The officers have not offered polygraph test results to corroborate their own trial testimony.

Appellants make an interesting argument when they urge that, even if probative, the polygraph evidence is too prejudicial for consideration by a jury. In essence, this is an argument

---

was deceptive during interrogation. *Id.* at 133, 7 O.O. 3d at 212, 372 N.E. 2d at 1323-1324.

[2] The requirement of a stipulation between the parties as a predicate to the admissibility of polygraph results, as set forth in *Souel,* does not work in a malicious prosecution case. The rule will not work because the polygraph examinations are part of *another* case — the underlying criminal case. Thus, the polygraph examinations will be taken before the parties align themselves in the malicious prosecution action; indeed, before the cause of action arises. To adhere to *Souel* in such cases would mean that polygraph evidence would never be admissible.

that the polygraph evidence is *too* relevant. If polygraph evidence is so potent that it would cause the ordinary person to accept it against other evidence, it would seem that the officers who considered and proceeded on the basis of polygraph results should be able to offer that as evidence that they did not act maliciously.

Appellants counter by arguing that the admission of polygraph evidence gives unwarranted and improper credibility to (or impeachment of) the testimony of the polygraph examinee. We are satisfied that an instruction from the trial court can direct the jury to consider the evidence only as it relates to defendants' state of mind and not as proof that the witness-examinee was lying or telling the truth.

Accordingly, we hold that where polygraph examinations are conducted as part of a police investigation prior to the instigation of criminal proceedings, such evidence is admissible at trial to show the state of mind of police officers who are defending against a claim of malicious prosecution. This is an exception to the general rule that polygraph evidence is not admissible without a stipulation between the parties. Thus, Officers Blasdel and Lance were entitled to put before the jury the polygraph evidence which they considered in deciding to prosecute.

Likewise, Myra Criss is entitled to have the polygraph evidence of Timmy and David Criss admitted in her defense. The polygraph evidence is relevant to show Myra's state of mind in furthering the prosecution of Gary and Everett Criss. Myra Criss was aware that the boys had each taken a polygraph examination and she was aware that the results indicated no deception on their part. This is relevant to her contention that she did not act maliciously.

The admissibility of the polygraph test results concerning Myra Criss herself presents a more complicated issue. Because she is both a defendant and an examinee, the introduction of her polygraph test results raises the concerns addressed in *Brown*. Myra Criss's polygraph test and results are relevant to a determination of the police officers' state of mind on the issue of malice.

But Myra Criss is not entitled to support her trial testimony by showing that she passed a lie detector test. A decision must be made as to whether an instruction limiting the relevancy of the Myra Criss polygraph evidence could be effective. In making this decision, the probative value of the purpose for which the evidence would be admitted must be weighed against the danger of prejudice from improper consideration of the evidence by the jury. These difficult decisions should be made in the first instance by the trial judge. They lie within the sound discretion of the trial judge and must be made in the context of the totality of circumstances presented by each specific case.

Finally, appellants argue that the polygraph evidence would confuse the jury about whether Gary and Everett Criss are guilty or innocent of raping Timothy even though they were acquitted at a criminal trial. We do not find this argument persuasive. Acquittal does satisfy one of the three essential elements of a malicious prosecution claim, specifically, that there was a termination of the prosecution in favor of the accused. *Trussell, supra,* syllabus. However, an acquittal does not establish a defendant's innocence but only shows the prosecution's failure to prove the criminal defendant's guilt beyond a reasonable doubt. But, the quantum of evidence which indicates that the defendant did the acts for

which he was charged is always an issue in malicious prosecution. Accordingly, evidence should not be excluded in a malicious prosecution trial simply because such evidence may also be relevant to the determination of guilt or innocence in the underlying criminal trial.

Applying the analysis we have made to the case before us, we find that the trial court erred when it excluded reference to the polygraph examinations and their results insofar as such evidence relates to the malicious prosecution claim based on the November 14, 1983 indictments.[3] We therefore affirm the judgment of the court of appeals which reversed and remanded for a new trial.[4]

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. I dissent. I would reverse the judgment of the court of appeals and reinstate the verdict of the jury, as remitted, and the judgment of the trial court.

My concern is twofold. Once again, a majority of this court condones the taking away of a jury verdict. The continued judicial erosion of this most precious right is both alarming and discouraging. In addition, the changing of the law by the majority on the admissibility of results of polygraph examinations creates needless confusion, an unfair retroactive application of the law and a dangerous precedent.

SWEENEY, J., concurs in the foregoing dissenting opinion.

---

[3] Plaintiffs-appellants have alleged two claims of malicious prosecution against defendants-appellees. They base their first claim on the August 4, 1983 indictments and their second claim on the November 14, 1983 indictments. Because the polygraph examinations, which were taken on August 11 and 24, were not before the police officers when they commenced criminal proceedings resulting in the August 4 indictments, that polygraph evidence can have no relevance to the officers' state of mind for the first malicious prosecution claim. However, the verdict and judgment did not apportion damages between claims arising before and after the polygraph examina-

tions. Therefore a new trial on both claims is required.

[4] Appellants also contend that the appellate court erred when it held that the trial court's jury instructions on the issue of punitive damages were reversible error because they did not comply with *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174. *Preston* had not been decided at the time this case was tried. Even so, the instructions, taken as a whole, might survive appellate challenge; but it is unnecessary for us to address this issue in light of our holding.