John **HEHEMANN, et al., Plaintiffs,**

v.

**CITY OF CINCINNATI, Defendant.**

No. C–1–92–303.

United States District Court, S.D. Ohio, W.D.

Dec. 11, 1992.

---

Teresa Cunningham, Cincinnati, OH, for plaintiffs.

Mark Vollman, Gary Lewis, R. Gary Winters, Lawrence Barbiere, Cincinnati, OH, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon defendant Swallen's and defendant Westfelt's motion for summary judgment (docs. 14 and 19), plaintiff's response (doc. 15 and 20) and the defendants' replies (doc. 17 and 21). In addition, Oral Argument on the motions was heard on December 10, 1992. For the reasons set forth below, the motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The parties do not dispute the material facts in this case. The alleged facts are as follows: On February 11, 1991, a Mr. Raymond Nash entered defendant Swallen's store in Western Hills and spoke to defendant Dennis Westfelt. Defendant Westfelt allegedly told Mr. Nash that Swallen's was going out of the lumber business and sold Mr. Nash items at a substantially reduced cost. Mr. Nash allegedly told the plaintiff Hehemann about this lumber "sale". A friend of Mr. Hehemann's told him to see defendant Westfelt if he was interested in purchasing any lumber from Swallen's. Mr. Hehemann purchased several items from the Swallen's Western Hills store sometime in February at a substantial reduction from the regular price. Mr. Hehemann then purchased more items from the Swallen's store later in February and in March.

Frank Rhodes is the Director of Corporate security for Swallen's Inc. On March 29, 1991, Rhodes was contacted by Sergeant Alan Matthews of the Cincinnati Police Department. Sergeant Matthews asked Rhodes whether Swallen's had any reports of theft in their lumber yard in their Western Hills store. Rhodes was not aware of any theft but decided to look into the possibility of such thefts.

Rhodes discovered that defendant Westfelt had sold lumber at an impermissively reduced price to Cincinnati Police Officers, as well as to members of the general public. Rhodes telephoned Sergeant Matthews that day and relayed to him this information. Matthews told Rhodes that one of the officers involved was the plaintiff Hehemann. Matthews asked Rhodes to meet with him and Sergeant Howard from the Internal Affairs Division of the Cincinnati Police Department. This meeting occurred on March 29, 1991. Mr. Rhodes was informed that there was an ongoing internal police investigation of plaintiff Hehemann at this time. Mr. Rhodes was not told anything further about this investigation.

In the afternoon of the 29th of March, Pat Caudill, a corporate investigator for Swallen's, interviewed defendant Westfelt in the presence of Sergeant Howard. Defendant Swallen's contends that during this interview Westfelt disclosed that "he had sold numerous items to officer Hehemann

for amounts far below permissible sale prices. Westfelt acknowledged that he did so without authorization." (Defendant Swallen's motion for Summary Judgment, Doc. 14, Pg. 3).

Plaintiff Hehemann alleges to have repeatedly inquired of defendant Westfelt whether he had the authority to sell the lumber at that large of a reduction in price. Plaintiff further alleges that Westfelt continually stated that he did have such authority.

Defendant Westfelt was fired from Swallen's after his interview with Caudill and Officer Howard on March 29, 1991. Before leaving Swallen's on March 29, 1991, the police officers asked Swallen's to advise them if Hehemann or any other officer of the Cincinnati police department came to the Western Hills store to pick up lumber. Rhodes agreed to this request and instructed his personnel to contact him if such an event occurred.

Allegedly on April 4, 1991, Officer Hehemann attempted to pick up lumber from the Western Hills store that he had previously purchased. Plaintiff did not have his sales receipt with him so he agreed to return later to pick up his lumber. Rhodes was informed by a store employee that an uniformed Cincinnati Police officer had been in the store and would be returning later to pick up his lumber. Rhodes communicated this to the Cincinnati Police department. Rhodes then met several police officers at the Western Hills store. The defendant Swallen's claims that the police officers asked permission to establish surveillance within the store. Rhodes granted the permission but the Plaintiff did not return to the store that night.

Plaintiff contends that on April 4, 1991 he asked Officer Nungester, who had also purchased lumber from Swallen's, when Nungester was going to pick up his lumber. Officer Nungester indicated he would do so on the fifth of April. Plaintiff asked Nungester to pick up his lumber too. According to the Plaintiff, Nungester agreed to do so.

On April 5, 1991, Officer Nungester rented a U-Haul truck to pick the lumber he had bought as well as the lumber purchased by the plaintiff. At approximately 9:30am on the morning of the fifth, Officer Nungester and the plaintiff arrived at Swallen's. The Swallen's security department was notified that the officers were present. This information was relayed to Sergeant Howard. Officer Nungester was told that he couldn't load the materials until 10:00am when the store officially opened. The plaintiff arrived at the store in a marked car because he was on duty. After learning that the lumber could not be loaded until 10:00am he received a call to which he responded. Before plaintiff's return at approximately 10:15am, Rhodes met with Sergeant Matthews and other police officers at the Provident Bank which is located close to the Swallen's store.

At 10:00am Officer Nungester and a Mr. Anthony Iacobucci began to load into the U-Haul the lumber marked "Nungester sold" and "Hehemann sold". The Plaintiff returned shortly thereafter. He entered and left the Swallen's store several times. He then responded to a report of a theft. He returned to the loading dock at Swallen's at approximately 11:05am where Officer Nungester and Mr. Iacobucci were in the process of finishing the loading or had finished loading the lumber. Only Officer Howard observed the loading of the truck and apparently no employee of Swallen's assisted the plaintiff, Nungester or Iacobucci in any fashion.

Officer Hehemann followed the truck to his home where he assisted Nungester and Iacobucci in unloading the materials allegedly purchased by the plaintiff. During the unloading, defendant Biddle, Captain Yetter and other police officers arrived and arrested the plaintiff and Officer Nungester.

The defendant Swallen's claims to have had no further contact with the Cincinnati Police department regarding Mr. Hehemann or his alleged purchases.

The Plaintiff was bound over to a grand jury that did not issue an indictment.

Plaintiff brings this action pursuant to the Civil Rights Act of 1871 codified at 42

U.S.C. § 1983, stating a conspiracy claim alleging that the plaintiff was deprived of his Procedural Due Process Rights under the Fourteenth Amendment with regard to his civil service rights, in particular with regard to his suspension, demotion and dismissal. O.R.C. § 124.34. The Plaintiff also brings an Ohio tort action alleging malicious prosecution, constructive discharge, defamation, and serious emotional distress.

### OPINION

■ The summary judgment procedure under Fed.R.Civ.Pro. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* 477 U.S. at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–1593). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may not be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### DEFENDANT SWALLEN'S AND DEFENDANT WESTFELT'S MOTIONS FOR SUMMARY JUDGMENT UNDER 42 U.S.C. § 1983 ARE GRANTED

■ The plaintiff claims that defendant Swallen's conspired with the Cincinnati Police Department to harm the plaintiff. 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court addressed the issue of conspiracies between public officials and private persons in *Adickes v. Kress & Co.* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court clearly laid out the two components necessary to succeed with this claim. "First, the plaintiff must show that the defendant deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" 398 U.S. at 150, 90 S.Ct. at 1604.

The Court heard oral arguments on the motions for summary judgment. From that Oral argument it was determined that the material facts in this case are not at issue. As such, the Supreme Court case of *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) is controlling.

Justice Rehnquist, speaking for the majority, made the following statement:

> The first inquiry in any § 1983 suit therefore is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' ...
>
> Respondent's claim is that his detention in the Potter County Jail was wrongful. Under a tort law analysis it may well have been. The question here, however, is whether his detention was unconstitutional.... The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted. ... The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'

There simply are no facts that would bear out a colorable claim that defendant Swallen's or defendant Westfelt in any way conspired with the City of Cincinnati to deprive the plaintiff of his Procedural Due Process claims under the Fourteenth Amendment with regard to his claim under O.R.C. § 124.34. As such, the Plaintiff has failed the first prong of the test from *Adickes*. Accordingly, the defendants Swallen's and Westfelt, under *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), must be granted summary judgment on the 42 U.S.C. § 1983 claim.

DEFENDANT SWALLEN'S MOTION FOR SUMMARY JUDGMENT ON THE MALICIOUS PROSECUTION, CONSTRUCTIVE DISCHARGE, DEFAMATION, AND SERIOUS EMOTIONAL DISTRESS ARE DENIED

█ The parties agree that under Ohio law, the tort of malicious prosecution has three components:

1. Malice in instituting or continuing a prosecution,

2. lack of probable cause, and

3. termination of a prosecution in favor of the accused.

*Criss v. Springfield Township*, 56 Ohio St.3d 82, 84, 564 N.E.2d 440, 443 (1990). The defendants Swallen's and Westfelt are correct when they state that there is no evidence that either Swallen's or Westfelt instituted or continued a prosecution against the plaintiff, the first prong of the test. This is true for the claims of constructive discharge, defamation, and serious emotional distress, also. However, the Court does not have subject matter jurisdiction to hear these claims with regard to defendants Swallen's or Westfelt as they do not involve a federal question or diversity of citizenship. Therefore, summary judgment is denied. Nonetheless, these claims are dismissed without prejudice as the Court does not have jurisdiction.

## CONCLUSION

The defendants Swallen's and Westfelt's motions for summary judgment on the 42 U.S.C. § 1983 claim are GRANTED. Defendants Swallen's and Westfelt's motions for summary judgment on the state tort claims are DENIED. The Plaintiff's state tort claims against defendants Swallen's and Westfelt are dismissed for lack of jurisdiction.

IT IS SO ORDERED.