DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Ottawa County Court of Common Pleas which granted defendants-appellees, Craig V. Emahiser and Robert Bratton, summary judgment on plaintiff-appellant Yolanda Burkholder's claim for malicious prosecution. From that judgment, appellant raises the following assignment of error:
 "The Trial Court erred to the prejudice of the Plaintiff in granting the Defendants' Motion for Summary Judgment as there are genuine issues of material facts and the Defendants' [sic] were not entitled to Judgment as a matter of law."
The undisputed facts of this case are as follows. Yolanda Burkholder is a deputy sheriff in the Corrections Division of the Ottawa County Sheriff's Department. On July 16, 1998 she was working at the Ottawa County Detention Facility, where she was responsible for the intake and discharge of inmates. During her shift, Deputy Burkholder escorted inmate Cassandra Silva from the holding area to the female range when she suspected Silva may be carrying contraband. Silva had been brought to the jail after her bond was revoked on a pending felony charge. That bond revocation, however, was prompted when Silva was charged with a misdemeanor traffic offense and a felony assault offense. Deputy Burkholder then forced Silva to remove her jail issue jumpsuit so that Burkholder could conduct a more thorough search of her. The search was witnessed by Deputy Lori Yurista, who found it to be inappropriate. Deputy Yurista then reported the search to appellee Robert Bratton, the Chief Deputy for the Sheriff's Department, and to Philip Lohmeyer, the Detention Center Administrator. Bratton and Lohmeyer reported the matter to appellee Sheriff Craig Emahiser, who ordered Bratton to conduct an investigation into the matter. Bratton and Emahiser also contacted Mark Mulligan, the Ottawa County Prosecutor. The officers sought legal advice from Mulligan because Sheriff Emahiser was concerned that Deputy Burkholder may have committed an assault against Silva.
Shortly thereafter, Bratton and Emahiser met with Prosecutor Mulligan to discuss the incident. In addition, Bratton conducted an internal investigation of the matter and obtained statements from Silva, Deputy Yurista and other officers who were on duty at the time of the incident. Bratton turned these statements over to Prosecutor Mulligan. Subsequently, Prosecutor Mulligan determined that probable cause existed to charge Deputy Burkholder with violations of R.C. 2933.32, Ohio's strip search statute. He then directed his staff to prepare complaints charging Burkholder with violating R.C. 2933.32(B)(1), conducting an unauthorized body cavity or strip search, and R.C. 2933.32(C)(1), failing to prepare a proper report of a body cavity or strip search. After the complaints were prepared, someone from the prosecutor's office contacted Bratton, who then signed the complaints and served them on Deputy Burkholder. After the filing of the complaints, Assistant Prosecutor Paul Skaff took over the prosecution of the case.
Subsequently, Burkholder's defense counsel informed the prosecution that Burkholder's defense would be that R.C. 2933.32 did not apply to the search at issue because Silva was held on a felony charge rather than a misdemeanor charge and that the strip search statute only applied to searches conducted on inmates held on misdemeanor charges. During a pretrial conference, the trial judge informed the parties that he was inclined to agree with Burkholder's argument. Based on the court's assertion, the prosecutor's office decided to dismiss the charges against Burkholder, which it did in a notice of dismissal dated February 11, 1999.
On February 10, 2000, Burkholder filed a complaint against Sheriff Emahiser and Chief Deputy Bratton for malicious prosecution. In her complaint, Burkholder alleged that Emahiser and Bratton, acting in their official capacities, prosecuted Burkholder without probable cause, wrongfully and with malice, for the crime of unauthorized search. Subsequently, Emahiser and Bratton filed a motion for summary judgment. In support of that motion, appellees argued that they were entitled to judgment as a matter of law because the criminal charges were filed against Burkholder upon the advice of counsel after full disclosure of all relevant information, there was probable cause to support the filing of the criminal charges, there was no evidence of malice in the filing of the criminal charges and appellees were entitled to immunity under R.C.2744.03(A)(6), the Political Subdivision Tort Liability Act. Appellees supported their summary judgment motion with the affidavits of Prosecutor Mark Mulligan, Deputy Bratton, Chief Emahiser and Assistant Prosecutor Paul Skaff.
Appellant filed a response to the summary judgment motion supported by the affidavits of herself and Deputy Diane LaFountain, the depositions of Emahiser, Bratton, Mulligan and Skaff and appellees' answers to interrogatories. Appellant also subsequently filed the affidavits of Jackie Wegman, appellant's FOP representative, and Gale Zelms, a corrections officer in the Ottawa County Detention Facility. Appellant argued that based on this evidence, genuine issues of material fact remained on the substantive issues before the court. In particular, appellant asserted that the evidence could support a conclusion that Emahiser and Bratton did not fully or properly advise the prosecuting attorney of all relevant facts, including the fact that Silva was being held on felony charges, prior to the filing of the criminal complaint, that Bratton signed the complaint without the advice of counsel and that Emahiser and Bratton wanted to continue the prosecution after the prosecuting attorney had dismissed the case. Appellant also asserted that appellees had not prosecuted corrections officers in the past who had conducted similar searches and that appellants had offered to forego filing criminal charges against her if she would resign, thereby demonstrating malice.
On April 10, 2001, the trial court filed an opinion and judgment entry granting appellees' motion for summary judgment and dismissing appellant's complaint. In granting the motion, the court held that appellant could not establish the elements necessary to sustain a malicious prosecution case. Specifically, the court held that the prosecution of appellant for violations of the strip search statute was based on probable cause. Because Silva was arrested on misdemeanor and traffic charges but was brought to the jail and incarcerated for a bond revocation on a prior felony charge, the court held that appellees had a reasonable ground to believe that appellant had violated the statute. The court further held that appellant had presented no specific factual evidence from which a reasonable inference of malice could be drawn. Finally, the court held appellees were entitled to judgment as a matter of law because it was undisputed that they had relied on the advice of counsel in filing the charges and because they were entitled to immunity under R.C. 2744.03(A)(6). It is from that judgment that appellant now appeals.
In her sole assignment of error, appellant challenges the trial court's order granting appellees summary judgment. In reviewing a ruling on a summary judgment motion, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Moreover, the moving party is required to "specifically delineate the basis upon which summary judgment is sought * * *." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus. Once the moving party sets forth specific reasons for summary judgment, the non-moving party bears a reciprocal burden to produce evidence on any element essential to her case for which she bears the burden of proof at trial. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 322-323.
The tort of malicious prosecution is designed to compensate a wrongly accused criminal defendant for the damages caused by the misuse of criminal actions. Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82,84. In order to prevail in an action for malicious prosecution, a plaintiff must show: (1) malice in instituting or continuing a criminal prosecution; (2) lack of probable cause to initiate the prosecution; and (3) termination of the prosecution in favor of the accused. Trussell v.General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus. It is undisputed that the prosecution was terminated in appellant's favor. Accordingly, the only issues for review are whether there was any evidence that appellees lacked probable cause in filing the criminal complaints against appellant or that appellees were malicious in instituting the prosecution.
Probable cause has been defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Ash v. Marlow (1851),20 Ohio 119, 129. "There is no requirement that the defendant must have evidence that will ensure a conviction." Deoma v. Shaker Heights (1990),68 Ohio App.3d 72, 77. Moreover, reliance upon the advice of counsel is a complete defense to a malicious prosecution action if the defendant "in fact, sought the advice of counsel, * * * fairly and impartially informed counsel of all the material facts bearing on the innocence or guilt of plaintiff, and * * * followed counsel's advice in good faith." Killileav. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 168.
Initially, we must determine whether probable cause existed to charge appellant with violations of the strip search statute. R.C. 2933.32
prohibits law enforcement officers from conducting body cavity or strip searches except under the circumstances specified in the statute. Central to this prohibition are the definitions of "body cavity search" and "strip search." The statute defines those terms as follows:
"(A) As used in this section:
 "(1) `Body cavity search' means an inspection of the anal or vaginal cavity of a person that is conducted visually, manually, or by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense.
 "(2) `Strip search' means an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense. * * *."
Accordingly, under the statute, body cavity and strip searches appear to be prohibited only when the detainee is being detained or arrested for the alleged commission of a misdemeanor or traffic offense.
In the present case, Cassandra Silva was arrested on a misdemeanor traffic charge and a felony assault charge. She was brought to jail, however, when her bond was revoked on a prior felony charge. Because there were misdemeanor aspects to Silva's detention, Prosecutor Mulligan testified that he believed Burkholder may have violated the statute. He testified in his deposition that he was aware of Silva's criminal record, that neither Sheriff Emahiser nor Chief Deputy Bratton pressured him to prosecute Burkholder, and that the decision to prosecute was a product of his own free will and independent judgment. Although the judge in the criminal proceedings indicated that in his view the statute did not apply to Burkholder's search of Silva, no case law existed that would have directed Prosecutor Mulligan to reach that same conclusion.
Appellant contends that appellees did not provide Mulligan with all of the information he needed to make that decision. Mulligan testified, however, that prior to preparing the complaints, he was aware of the requirements of the strip search statute. He also was cognizant of the charges on which Silva was being held and had been provided with the written statements of Deputy Lori Yurista, Sergeant P.A. Fabian, Deputy Martin Matthes and Corporal Scott R. Krieger. Deputy Yurista witnessed Burkholder's treatment of Silva, and Fabian, Matthes and Krieger heard the encounter over the intercom system. These reports reveal that Burkholder forcibly removed Silva's orange jail uniform, pulling it along with Silva's underwear down to her knees during a verbal argument between the two women. Finally, during his deposition, Mulligan was asked to review statements of Burkholder, Silva and another inmate. Mulligan stated that none of these statements would have altered his decision to prosecute Burkholder for violations of the strip search statute. Despite the ultimate outcome of the criminal proceedings, the undisputed evidence supports a conclusion that those proceedings were initiated based on probable cause and on the advice of counsel.
Appellant further asserts that a genuine issue of material fact remains regarding whether appellees were malicious in their institution of criminal proceedings against appellant. We disagree. The term "malice" has been defined as the "willful and intentional design to do injury, or the intention or desire to harm another." Jackson v. Butler Cty. Bd. ofCommrs. (1991), 76 Ohio App.3d 448, 453. "For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss, supra, at 85. Accordingly, the element of malice "turns directly on the defendant's state of mind." Id. at 84. In our view, the trial court aptly summarized the evidence on this issue when it concluded that there was no genuine issue of material fact on the malice element:
 "Defendants immediately involved an independent third party — the Prosecutor's Office — in the process of handling the incident. In fact, Prosecutor Mulligan was contacted the very day of the event and a meeting was held literally within hours. Defendants assured that an investigation took place and that Burkholder's fellow officers who were on duty all gave statements. The subject of the search, inmate Silva, was interviewed twice. Defendants did not immediately rush to file charges, but waited until the Prosecutor's Office gave direction to do so. It is also significant that Burkholder was an employee of the Sheriff's Department. A decision to prosecute would inevitably be politically and personally embarrassing as it would suggest misconduct in the office Defendants oversee. The fact that Defendants turned the decision to prosecute over to the Prosecutor at the risk of personal or professional embarrassment is further evidence of the absence of malice."
Given this evidence, we too agree that appellant failed to present the trial court with evidence that appellees initiated the prosecution of appellant with malice.
Because appellant did not counter appellees' evidence by raising a genuine issue of material fact on her claim for malicious prosecution, we need not address the issue of whether appellees were immune from liability under R.C. 2744.03.
Accordingly, because the relevant facts were undisputed and appellees were entitled to judgment as a matter of law on appellant's claim for malicious prosecution, the trial court did not err in granting appellees' motion for summary judgment and the sole assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.