NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0558n.06

No. 11-3698

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 10, 2013*
DEBORAH S. HUNT, Clerk

RICHARD SOLETHER,                                    )
                                                     )       ON APPEAL FROM THE
            Petitioner - Appellant,                  )       UNITED STATES DISTRICT
                                                     )       COURT FOR THE NORTHERN
v.                                                   )       DISTRICT OF OHIO
                                                     )
JESSE WILLIAMS, Warden,                              )
                                                     )
            Respondent - Appellee.                   )
                                                     )

BEFORE:  KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Petitioner Richard Solether appeals the district

court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus, challenging his Ohio rape

conviction on the basis that the prosecution's failure to disclose the victim's polygraph results, which

indicated that she was untruthful about the alleged rape, violated his rights under *Brady v. Maryland*,

373 U.S. 83 (1963), and the Confrontation Clause.  Because the Ohio appellate court's rejection of

Solether's claims was neither contrary to, nor an unreasonable application of, clearly established

federal law, we AFFIRM.

I.

A.

The Ohio appellate court summarized the trial proceedings as follows:

> On November 1, 2006, . . . [an Ohio grand jury] indicted [Solether] on one
> count of rape, in violation of R.C. 2907.02(A)(2).  The charge stemmed from an
> incident on August 21, 2006, where Solether, then a Perrysburg Township Police

>Officer, met the victim at a Fricker's restaurant in Perrysburg, Wood County, Ohio. The two talked for a few hours and left at closing time. Although the versions of the events differ, it is undisputed that the two ended up at Solether's apartment. According to Solether's trial testimony, he and the victim were kissing and it got "hot and heavy." Solether admitted to placing his hand in the victim's underpants and digitally penetrating her vagina. Solether testified that they were engaging in this conduct for approximately ten seconds when the victim stated: "I don't think that we ought to do this." Solether stated that he immediately leaned back, the victim sat on the couch, and then he turned on the television. After a bit, the victim asked Solether to take her home; Solether drove the victim home.

>The victim testified that at Solether's apartment they each had a glass of wine. The victim used the restroom, came back in the living room and sat on the couch. The victim stated that she was waiting for Solether to take her home; she assumed that Solether would take her home because she had finished her wine. According to the victim, Solether sat down on the couch and began kissing her neck. The victim testified that she repeatedly told Solether that she was tired and that she just wanted to go home. The victim testified that she kept inching away from Solether and that he would not get off of her; Solether pushed her underwear down and inserted his finger in her vagina. The victim testified that they eventually wound up on the floor and that Solether abruptly stopped and took her home.

*State v. Solether*, No. WD-07-053, 2008 WL 4278210, at *1 (Ohio Ct. App. Sept. 19, 2008) (names altered by replacing "appellant" with Solether).

In cross-examining the victim, defense counsel elicited testimony that the victim's employer reported the incident to the police after the victim revealed her rape allegations during a night of drinking, and that the victim did not speak with the police until several days after the incident. Defense counsel also cross-examined the victim about the fact that she provided the police with a false name for the alleged perpetrator, "Kevin," although (as the victim conceded) Solether introduced himself as "Rick" at the bar.

The prosecution offered testimony from one of the initial investigators, Officer Robert Gates, who had training in sexual-assault crimes and worked at the same police department as Solether.

Attempting to mitigate concerns about the victim's delayed reporting of the incident, the prosecution had the following exchange with the officer:

> Q      Based upon your training and experience is it unusual for a victim of sexual assault not to report the assault immediately?
>
> A      No, that's not unusual.

PID 713. The defense moved to strike the officer's answer as having no foundation; the trial court overruled that motion and the prosecution continued with its exchange on this point, without further objection by the defense:

> Q      Again based upon your training and experience what are some of these reasons that victims of sexual assaults may not report immediately?
>
> A      It can be a number of reasons. It could be fear of . . . the offender. It could be fear that they would have to go through with the offense again several times in front of strangers. It might be fear that nothing could be done by the system[,] that the case wouldn't be strong enough for example. Could be a number of reasons.
>
> . . .
>
> . . .      It might be that the offender would be a well known or powerful person that may be [sic] because of that, they might not be believed.
>
> Q      Based upon your training and experience if the offender was a police officer would that be a reason for a victim not to report a sexual assault?
>
> A      Yes, I think so.

PID 714.

After this exchange, Officer Gates explained that he became involved in Solether's case around August 26, 2006, which is when the department's lieutenant relayed to him that the victim's employer had reported the incident and his belief that the alleged perpetrator was a police officer.

Officer Gates interviewed the victim, who said the perpetrator's name was "Kevin." However, based on the victim's description of "Kevin" and the circumstances of the alleged incident, Officer Gates, with the lieutenant's help, identified Solether as the alleged perpetrator. The lieutenant suspended Solether's employment with the department. Immediately thereafter, Officer Gates referred the matter to the Ohio Bureau of Criminal Investigation (BCI), given Solether's employment with the police department. BCI Agent Thomas Brokamp, who took over the investigation, testified (without objection from the defense) that the victim's in-court testimony was consistent with what she had told him during a post-incident interview.

The jury convicted Solether of the rape charge. The trial court imposed a four-year prison term and five-year period of post-release supervision.

**B.**

Prior to filing his state-court appellate brief, Solether learned that the victim had failed a polygraph examination administered by BCI in October 2006. The state polygraphist reported that the victim's reactions to questions were indicative of "deception," and that she did not tell the truth during the test.

In light of this post-trial disclosure, Solether argued, in his second assignment of error on direct appeal, that the prosecution's failure to disclose the polygraph results violated his rights under *Brady*, as well as the Due Process and Confrontation Clauses:

> Defense counsel would have used [the victim]'s polygraph results indicating untruthfulness, to impeach Gates' expert testimony regarding his implied assertion that no red flags were present in this case, that her behavior was typical and thus credible, and that there is no cause for concern with respect to this particular complainant. With the polygraph results, defense counsel would have been able to

put forth an alternative explanation for her delayed reporting—that she was concerned with being caught in a falsehood—which ultimately is what happened when she was later subjected to a polygraph. Defense counsel would have questioned Gates as to whether it is typical for police departments to go forward with the charges in a "he said/she said" posture when the sexual assault victim fails her polygraph test regarding the alleged incident, and whether this might be an alternative explanation for her behaviors.

Defense counsel recognizes that polygraph evidence would not be admissible to impeach [the victim]. Indeed, defense counsel concedes that if Gates had not testified, the polygraph results would have been inadmissible. But once Gates took the stand and had the effect of bolstering and vouching for [the victim]'s testimony with the experience, credibility, and wisdom of his police department, the door was opened for cross-examination on this point. The state should not be allowed to use the rules of evidence barring polygraphs in many circumstances as a sword to mislead the jury, and to give the false impression to the jury that [the victim]'s behavior was typical and "par for the course," when, in fact, a major problem with her credibility arose in the investigation when she failed the polygraph. Gates and the state were aware of an alternate explanation for [the victim's] behavior—one that supports Solether's innocence—yet Gates could not be questioned about this fact because this information was not disclosed to the defense. By failing to disclose that [the victim] had failed a polygraph examination, the state violated Solether's due process rights and right to adequately confront the witnesses against him.

PID 217–18.

The Ohio appellate court affirmed Solether's conviction and overruled his second assignment

of error:

In Solether's second assignment of error, he argues that the state, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), erred when it failed to produce material exculpatory evidence which hindered [his] ability to effectively cross-examine Officer Robert Gates. Specifically, Solether contends that the state's failure to disclose the victim's polygraph examination results, indicating deception, prejudiced his ability to cross-examine Officer Gates who, according to Solether, "bolstered" the victim's testimony/credibility.

In *Brady* . . . [,] the Supreme Court of the United States held that suppression of material evidence violates a defendant's due process rights. Evidence is

"material" where there exists a "reasonable probability" that had the evidence been disclosed at trial the outcome would have been different. Applying *Brady* to polygraph examination results, the Supreme Court later held that the state's failure to disclose the results of a polygraph examination of a state witness did not deprive the defense of material evidence. *Wood v. Bartholomew*, 516 U.S. 1 (1995). The [C]ourt reasoned:

"The information at issue here, then—the results of a polygraph examination of one of the witnesses—is not 'evidence' at all. Disclosure of the polygraph results, then, could have had no direct effect on the outcome of trial, because respondent could have made no mention of them either during argument or while questioning witnesses." *Id.* at 6.

The [C]ourt discounted the argument that the discovery of the test results could have led to admissible evidence as too speculative. *Id.* at 6–7.

In *State v. Souel*, 372 N.E.2d 1318 (Ohio 1978), the Supreme Court of Ohio set forth the criteria for the admissibility of polygraph examination results. Such criterion includes the written stipulation of the parties and is still subject to the discretion of the trial court. In *State v. Davis*, 581 N.E.2d 1362 (Ohio 1991), the court addressed the issue of the discoverability of the evidence, rather than its use at trial. Specifically, the court addressed the issue of "whether the state is required to provide, through discovery, the results of polygraph tests that were performed on persons other than the defendant or any co-defendant(s)." The court dismissed the appellant's argument that the discovery of the results could have led to additional evidence that could have aided his defense. The court further explained: "This court has never held that a defendant is entitled to the results of polygraph examinations, nor has this court held that polygraph examinations are scientific tests which are discoverable pursuant to Crim. R. 16."

Solether acknowledges that the victim's polygraph test results were inadmissible to impeach her testimony; however, [he] contends that the test results were admissible to impeach the testimony of Officer Gates who, according to Solether, testified as to the veracity of the victim's statements. Solether relies primarily on three cases to support his argument that polygraph results can be admissible for other purposes. In *Criss v. Springfield Township*, 564 N.E.2d 440 (Ohio 1990), *Moss v. Nationwide Mutual Insurance Co.*, 493 N.E.2d 969 (Ohio Ct. App. 1985), and *State v. Manning*, 598 N.E.2d 25 (Ohio Ct. App. 1991), the courts permitted the introduction of polygraph examination results for various reasons. In *Criss*, the court held that where polygraph examinations are conducted during a

criminal investigation the examination results are admissible to show the state of mind of the police officers who were defending against a claim of malicious prosecution. In reaching its decision, the court noted that the concerns in *State v. Souel*, *supra*, were not implicated because the polygraph test results were not "being offered for the purpose of corroborating or impeaching testimony at trial." Next, in *Moss*, which involved an insured's bad faith claim, the court, first noting that *Souel* does not control in a civil case setting, permitted the use of the insured's polygraph examination test results to show the basis for the insurer's denial of coverage. Finally, in *Manning*[,] the court held that polygraph examination results from the deceased victim were admissible to rebut the appellant's self-defense claim.

*Criss* and *Moss* are immediately distinguishable based upon the fact that the evidence was admitted in a civil, rather than a criminal, trial. Further, the *Criss* court stressed that the evidence was to be used to establish the officers' state of mind and not to corroborate or impeach trial testimony. In *Manning*, the court did permit the polygraph testimony of the deceased victim to be admitted during trial. On appeal, the court, citing *Criss*, held that the testimony was admissible to demonstrate the state of mind of the appellant and to rebut her claim of self-defense. Unlike *Manning*, Solether argues that the victim's polygraph examination was admissible to impeach Officer Gates' trial testimony. As set forth above, polygraph examination results are not admissible to impeach or corroborate trial testimony.

Based on the foregoing, we find that the state did not fail to provide Solether with "material" evidence as set forth in *Brady v. Maryland* because the victim's polygraph examination results were inadmissible at trial. Solether's second assignment of error is not well-taken.

*Solether*, 2008 WL 4278210, at *4–6 (internal citations altered or omitted; formatting altered; internal paragraph numbers omitted; names altered by replacing "appellant" with Solether). Seeking leave to appeal to the Ohio Supreme Court, Solether reasserted his claims and argued that the appellate court "improperly broadened the Ohio courts' guidelines regarding admissibility of polygraph results." The Ohio Supreme Court denied leave to appeal. *See State v. Solether*, 901 N.E.2d 245 (Ohio 2009) (table decision).

7

Meanwhile, during the pendency of his direct appeal, Solether moved for post-conviction relief and a new trial. The trial court denied the motions. Solether appealed, reasserting his *Brady* and confrontation claims involving the polygraph results. The Ohio appellate court ruled that Solether's claims were barred by res judicata and law-of-the-case principles because they were adjudicated on direct appeal. *See State v. Solether*, No. WD-08-73, 2010 WL 219313 (Ohio Ct. App. Jan. 22, 2010). The Ohio Supreme Court denied leave to appeal. *See State v. Solether*, 927 N.E.2d 12 (Ohio 2010) (table decision).

## C.

In February 2010, Solether timely filed this habeas action, asserting that: (1) the prosecution violated *Brady* when it failed to disclose that the victim had failed a polygraph test (ground one); and (2) the prosecution violated his Sixth Amendment confrontation rights, right to present a complete defense, and Fifth and Fourteenth Amendment rights to a fair trial by not disclosing the victim's failed polygraph results (ground two).[1] A magistrate judge issued a report, recommending denial of Solether's habeas petition on the basis that: (1) the polygraph results were not "evidence" implicating *Brady* because they were inadmissible under Ohio law, and (2) the claims raised in ground two were not fairly presented to the Ohio courts. *See Solether v. Williams*, No. 3:10-cv-346, 2011 WL 2175010 (N.D. Ohio Mar. 14, 2011) (report and recommendation) (unpublished).

After reviewing Solether's objections to the magistrate judge's report, the district court adopted the report with respect to ground one. *See Solether v. Williams*, No. 3:10-cv-346, 2011 WL

---

[1]Although Solether raised other grounds in his petition, they are not the subject of this appeal.

2174992, at *1–2 (N.D. Ohio June 3, 2011). However, contrary to the magistrate judge's recommendation on ground two, the district court concluded that Solether had fairly presented his claims to the Ohio courts but was not entitled to habeas relief because the admissibility of polygraph evidence is a state-law issue that does not implicate a defendant's constitutional rights. *Id.* at *2–5. We granted a certificate of appealability.

## II.

Solether exhausted in the Ohio courts his claims that the prosecution's non-disclosure of the polygraph results violated *Brady* and his right to confront and cross-examine Officer Gates. The state argues that Solether failed to exhaust in the Ohio courts his additional claims that the prosecution's non-disclosure of the polygraph results violated his right to present a complete defense, and his right to use the results to cross-examine Agent Brokamp and to explore the police investigators' state of mind.[2]

To obtain federal habeas relief, a petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Under this exhaustion requirement, the petitioner must "'fairly present' to the state courts the 'substance' of his federal habeas claim prior to seeking such relief." *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999) (citations omitted). In other words, the petitioner must present to the state courts "both the factual and legal basis for his claim," as well as "the same claim under the same theory." *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (internal quotation marks omitted).

---

[2]To the extent that Solether alludes to a violation of his fair trial rights, we decline to address this issue, which is raised in a "perfunctory manner" on appeal. *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010).

Were the rule otherwise, "state courts would be compelled to consider sua sponte all possible federal legal claims that a petitioner's factual allegations might arguably support," undermining "[t]he principle of comity underlying the exhaustion doctrine." *Id.* at 556 (italics omitted).

> This court has noted four actions a [petitioner] can take which are significant to the determination whether a claim has been 'fairly presented': (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.* (citation omitted).

To the extent that Solether asserts that the prosecution's non-disclosure violated his right to cross-examine Agent Brokamp, he did not present this claim to the Ohio courts. Indeed, he argued in state court that he would have used the polygraph results to impeach Officer Gates, and he "concede[d] that if Gates had not testified, the polygraph results would have been inadmissible." This claim involving Agent Brokamp, therefore, is unexhausted. As the state correctly argues, the claim is now procedurally defaulted for purposes of federal habeas review because the Ohio courts to which Solether would be required to exhaust the claim would find it procedurally barred, *see Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir. 2004) (holding that an unexhausted claim was procedurally defaulted in habeas review because it would be procedurally barred under Ohio doctrine of res judicata); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under

the State's doctrine of res judicata."), and Solether has not made any showing to excuse the default, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To the extent that Solether claims that the prosecution violated his right to present a complete defense by failing to disclosure the polygraph results, this claim forms the overarching constitutional basis for his *Brady* claim and is thus properly before us. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) (explaining that the right to a complete defense, which is derived from the Due Process Clause of the Fourteenth Amendment, consists of "what might loosely be called the area of constitutionally guaranteed access to evidence," which includes *Brady* material (internal quotation marks omitted)).

Solether also exhausted his claim that the prosecution's non-disclosure violated his due process and confrontation rights to use the polygraph results in questioning Officer Gates to establish the police investigators' state of mind, in order to attack the credibility of the investigation and decision to pursue prosecution. In his state appellate brief, he partly relied on *Criss v. Springfield Township*, 564 N.E.2d 440 (Ohio 1990), arguing that the polygraph results would have been admissible at trial. He explained that the Ohio Supreme Court in *Criss* held that police officers defending against a claim of malicious prosecution were allowed to present witness polygraph results, which were obtained during the course of their criminal investigation, to show the officers' state of mind in pursuing prosecution. His citation to and discussion of *Criss*—combined with his reasoning that he would have questioned the officer about whether it is typical for charges to be brought "in a 'he said/she said' posture when the sexual assault victim fails her polygraph test regarding the alleged incident"—makes clear that he intended to question Officer Gates about the

police investigators' state of mind in pursuing his criminal case. Thus, Solether fairly presented this claim to the Ohio courts.

## III.

## A.

In a federal habeas appeal, "we review de novo the district court's conclusions on issues of law and on mixed questions of law and fact and review its factual findings for clear error." *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc) (italics omitted). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief only if the state court's adjudication of a prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Only the first provision is at issue here, under which the term "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of th[e Supreme Court]'s decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotation marks omitted). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. An "unreasonable application" occurs when "the

state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Although the Ohio appellate court focused its analysis on Solether's *Brady* claim in adjudicating his second assignment of error (which encompassed both a *Brady* and confrontation claim), it rejected that assignment of error in its entirety and there is no indication that the Ohio court did not adjudicate both the *Brady* and confrontation claims on the merits. Thus, as Solether concedes, we must apply AEDPA deference. *See Harrington v. Richter*, 562 U.S. ----, ----, 131 S. Ct. 770, 784–85 (2011).

**B.**

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A *Brady* violation occurs when: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the state suppressed the evidence, "either willfully or inadvertently"; and (3) "prejudice . . . ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Regardless whether the defendant requested the evidence, "favorable evidence is material, and constitutional error results from its suppression by the [prosecution], if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted).

In evaluating Solether's *Brady* claim, we start with the premise that the polygraph results were inadmissible under Ohio law, even for the purpose of cross-examining Officer Gates. Solether

13

argues that Ohio law permits the admission of polygraph results for purposes of impeaching someone other than the polygraph examinee or to establish a witness's state of mind. Although Solether contends that the Ohio appellate court erred in ruling that the polygraph results were inadmissible as a matter of state evidentiary law, the court's state-law ruling "binds [this] court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (citations omitted).

In *Wood*, the Supreme Court addressed a state prisoner's habeas challenge to his murder conviction. *See* 516 U.S. 1. The prisoner argued that the prosecution's failure to disclose the polygraph results of a key witness violated *Brady*. The Court held that because the polygraph results were inadmissible under state law even for impeachment purposes absent the parties' stipulation, it was "not 'evidence' at all" for *Brady* purposes. *Id.* at 6. The Court reasoned that "[d]isclosure of the polygraph results . . . could have had no direct effect on the outcome of trial, because [the prisoner] could have made no mention of them either during argument or while questioning witnesses." *Id.* Moreover, the Court dismissed as "mere speculation" the reasoning of the court of appeals that the result of the polygraph test was nonetheless subject to disclosure, despite its inadmissability at trial, on the theory that the information "might have led [defense] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized." *Id.* (citation omitted). As the Court emphasized, defense counsel acknowledged that the polygraph results would not have affected the scope of his cross-examination of the witness, counsel obtained no contradictions or admissions from the witness when permitted to refer to the polygraph results during a federal evidentiary hearing, and, even without that witness's testimony, the prosecution's case against the prisoner was overwhelming. *Id.* at 6–8.

Given the Ohio court's evidentiary ruling in Solether's direct appeal, it follows under *Wood* that the polygraph results would have had no direct effect on the trial's outcome because defense counsel could have made no mention of the results at trial. Although *Wood* directs that we cannot "mere[ly] speculat[e]" as to the indirect consequences that polygraph results would have had for the defense, 516 U.S. at 6, the Supreme Court did not foreclose the possibility that a habeas petitioner might be able to establish that polygraph results would have materially affected the defense strategy and trial's outcome, even if those results could not have been introduced as evidence or mentioned during cross-examination at trial. Here, however, Solether never argued in Ohio court that (and failed to develop a record establishing how) the disclosure of the polygraph results would have led to additional evidence or otherwise impacted defense strategy in a manner that would have materially affected the trial's outcome. We therefore cannot review this unexhausted and procedurally defaulted aspect of Solether's *Brady* claim. *See Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012) ("Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review."); *Hicks*, 377 F.3d at 552 (explaining that a claim must be raised under the "same theory" in state court to be properly exhausted for habeas review purposes).

## C.

Solether also asserts that a state evidentiary rule cannot be employed to defeat a defendant's constitutional rights, citing *United States v. Scheffer*, 523 U.S. 303 (1998). States have substantial latitude to define rules for the exclusion of evidence and to apply those rules to criminal defendants, but the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks omitted).

"This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (internal quotation marks and alteration omitted).

In *Scheffer*, the Supreme Court held that a per se rule against admission of polygraph results in court-martial proceedings (Military Rule of Evidence 707) did not violate an accused's right to present a defense.[3] *See* 523 U.S. at 305. The Supreme Court held that Rule 707 was neither arbitrary nor capricious. The Court reasoned that "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial," and, because there is "simply no consensus that polygraph evidence is reliable," individual jurisdictions "may reasonably reach differing conclusions as to whether polygraph evidence should be admitted." *Id.* at 309–12.

> The Court then held that Rule 707 did not implicate any significant interest of the accused:

> Here, the court members heard all the relevant details of the charged offense from the perspective of the accused, and the Rule did not preclude him from introducing any factual evidence. Rather, [the accused] was barred merely from introducing expert opinion testimony to bolster his own credibility. Moreover, . . . Rule 707 did not prohibit [the accused] from testifying on his own behalf; he freely exercised his choice to convey his version of the facts to the court-martial members. We therefore cannot conclude that [the accused]'s defense was significantly impaired by the exclusion of polygraph evidence. Rule 707 is thus constitutional under our precedents.

*Id.* at 316–17 (internal footnote omitted). The Court also rejected the notion that the polygraph results were "factual evidence," reasoning that the results were not facts about the alleged crime but "merely the opinion of a witness with no knowledge about any of the facts surrounding the alleged

---

[3]The military term "accused" is used rather than the civilian term "defendant."

crime, concerning whether the [accused] spoke truthfully or deceptively on another occasion."[4] *Id.* at 317 n.13.

Given *Scheffer*'s holding and the circumstances of Solether's case, the Ohio appellate court's evidentiary ruling was not unreasonable under the Supreme Court's precedents.[5] Similar to the accused in *Scheffer*, Solether was not precluded from introducing factual evidence or from testifying in his behalf as he did at trial. His defense theory rested on the notion that the victim's conduct in the days following the alleged rape raised credibility questions, which he fully explored at trial. He argues that he would have used the results to impeach Officer Gates's testimony bolstering the victim's credibility, but the Ohio court found such use impermissible and no Supreme Court case requires the admission of polygraph results for this purpose. Although the polygraph results arguably would have aided defense counsel's cross-examination of Officer Gates, defense counsel had the opportunity to cross-examine Officer Gates, during which counsel established that the officer did not have a degree in psychology or social work, the officer's opinions were based solely on his experiences as a police officer, his involvement in the investigation was limited, and Solether had

---

[4]In a concurrence, Justice Kennedy, joined by three other justices, emphasized that "[g]iven the ongoing debate about polygraphs, I agree the rule of exclusion is not so arbitrary or disproportionate that it is unconstitutional." *Scheffer*, 523 U.S. at 318 (Kennedy, J., concurring). However, Justice Kennedy also "doubt[ed] . . . that the rule of per se exclusion is wise," suggested that "some later case might present a more compelling case for introduction of" polygraph results, and recognized the "inconsistency" between government use of polygraphs and the argument that such tests are inaccurate for evidentiary purposes. *Id.* (italics omitted).

[5]Solether cites several non-binding or unpublished cases to support his argument that the exclusion of polygraph results implicate a defendant's constitutional rights. None of these cases, however, reflect clearly established federal law relevant to issue at hand.

denied that a sexual assault ever occurred. It also was established at trial that the victim provided the officer with a false name for the alleged perpetrator.

Solether also contends that he would have used the polygraph results to question Officer Gates in order to establish the police investigators' state of mind. Officer Gates, however, transferred the criminal investigation to BCI in its early stages; he did not administer the polygraph test or have any connection to it. Any cross-examination of the officer about why the police investigation continued despite the negative polygraph results likely would have been attenuated, and there is no record establishing what testimony would have been obtained had defense counsel cross-examined the officer using the polygraph results.

**D.**

The Confrontation Clause guarantees: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "[T]he Confrontation Clause's functional purpose [is to] ensur[e] a defendant an opportunity for cross-examination." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). Given the Supreme Court's treatment of polygraph evidence, there is no basis for us to hold that the Ohio court's implied conclusion that Solether's inability to use the results to cross-examine Gates did not violate the Confrontation Clause was contrary to, or an unreasonable application of, any Supreme Court precedent interpreting the Confrontation Clause.

**IV.**

For the foregoing reasons, we AFFIRM the district court's judgment.