[Cite as *Pisoni v. McCord*, 2018-Ohio-64.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JACLYN PISONI, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017CA00111 |
| CHRISTOPHER MCCORD, ET AL | : |  |
|  | : |  |
| Defendants-Appellants | : | OPINION |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
Common Pleas, Case No. 2016CV01492

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    January 9, 2018

APPEARANCES:

For Plaintiffs-Appellees

JOHN D. FALGIANI, JR
P.O. BOX 8533
Warren, OH 44484

For Defendants-Appellants

R. ERIC SMEARMAN
7251 Engle Road
Suite 404
Middleburg Heights, OH 44130

*Gwin, P.J.*

{¶1}    Appellant appeals the June 2, 2017 judgment entry of the Stark County Court of Common Pleas denying portions of his motion for summary judgment and finding there are genuine issues of material fact as to whether he is immune from liability for false arrest, use of excessive force, and malicious prosecution.

*Facts & Procedural History*

{¶2}    On July 10, 2015, appellant Christopher McCord ("McCord") an officer with the Alliance Police Department, observed an SUV following a van at what he thought was a close distance.  McCord followed the vehicles.  The driver of the SUV was appellee Jaclyn Pisoni ("Pisoni") and the driver of the van was her husband, Jerry Pisoni.  The SUV pulled into a driveway and McCord continued to follow the van.  After observing the driver of the van unsuccessfully negotiate two right-hand turns, driving over the curb each time, McCord initiated a traffic stop.

{¶3}    The parties dispute how Pisoni arrived on the scene of the traffic stop. Pisoni testified she observed the flashing lights, became concerned, and decided to drive over to see what happened.  Pisoni stated she was driving at a normal rate of speed. McCord characterized Pisoni's approach as driving at an accelerated rate of speed. However, both agree that Pisoni parked on the left-hand side of the road, approximately ten feet in front of McCord's traffic stop.  Pisoni's daughter was in the back seat of the SUV, strapped into a car seat.

{¶4}    McCord asked Pisoni's husband whether Pisoni had been drinking too and Jerry Pisoni stated, "No, she's just mad.  She's mad at me."  Pisoni parked and exited her vehicle, approaching the traffic stop.  McCord asked, "Can I help you?" and Pisoni

explained that the driver of the van was her husband. McCord stated, "Well, I am the police department and I don't need you pulling up to our stop like that." As Pisoni responded, she continued to walk towards McCord. McCord informed her she was parked illegally and said, "You see my fancy lights back here and my uniform? I am a police officer. Good bye."

{¶5} Pisoni responded, "F*** you," and began to walk away. McCord said, "good bye." Pisoni again stated, "f*** you" as she approached her vehicle and McCord again said "good bye." As Pisoni neared the front of her vehicle she turned around and displayed both of her middle fingers at McCord and said, "f*** yourself," to which McCord asked, "You want to go to jail? Is that what you want to do?" Pisoni stated McCord could not do that and approached the door to her vehicle. McCord stated, "Actually, it's going to be a yes. Actually, you are obstructing my investigation." Pisoni opened her car door and next stated, "don't you touch me." McCord replied, "You're under arrest."

{¶6} There is no dispute McCord placed Pisoni in a "come-along" hold. He repeated that she was under arrest and told her to "stop fighting." Pisoni replied, "I'm not." McCord then attempted to use a pain compliance control tactic, and both he and Pisoni fell to the ground. Pisoni claims she was then handcuffed, placed in the back of the police cruiser, and was "verbally berated and humiliated." She also claims she sustained physical injury.

{¶7} Pisoni was charged with obstruction of official business, a felony of the fifth degree, and resisting arrest, a misdemeanor. The grand jury did not indict Pisoni on either of these charges, but instead indicted her on a charge of disorderly conduct, a fourth degree misdemeanor. The Stark County Common Pleas Court remanded the case to the

Alliance Municipal Court for further prosecution.  An Alliance Municipal Court jury found Pisoni not guilty of the charge of disorderly conduct.

{¶8}    On June 28, 2016, Pisoni filed a complaint against McCord, Chief of Alliance Police Scott Griffith ("Griffith"), and the City of Alliance, and included claims for false arrest, use of excessive force, malicious prosecution, intentional infliction of emotional distress, violation of her civil rights, and spoliation of evidence.  McCord, Griffith, and the City of Alliance filed an answer on September 1, 2016, and stated the claims in the complaint were barred because of the doctrines of absolute and qualified immunity.

{¶9}    McCord, Griffith, and the City of Alliance filed a motion for summary judgment on March 27, 2017.  Attached to the motion for summary judgment was the affidavit of McCord.  McCord claims he was distracted from his traffic stop because of Pisoni's actions, that she may have been a threat, and that he did not want her to enter her vehicle because she may flee or retrieve a weapon.

{¶10} McCord stated that as Pisoni's vehicle approached him, her husband indicated it was his wife and stated, "she's pissed at me."  McCord averred Mr. Pisoni's comment and the proximity of Pisoni's vehicle was a "concern for his safety and his investigation."  McCord stated when Pisoni exited her vehicle and began to approach him, his attention was not on the investigation of her husband, but was focused on Pisoni.  McCord, "viewed her as a potential threat to me."  McCord stated he asked Pisoni to leave, she said, "f*** you," he told her "good bye," and she stated "f*** you" again.  McCord averred Pisoni continued back to her car, stopped in front of her SUV, raised both middle fingers toward him, and yelled "go f*** yourself," which diverted his attention from Mr. Pisoni and interrupted his investigation.

{¶11} McCord stated he approached Pisoni as she returned to her vehicle, asked her if she wanted to go to jail, she yelled something, and he said, "I guess that's a yes." McCord averred as he came closer to the vehicle, Pisoni opened the door of her vehicle. He told her she was obstructing his investigation and she again said "go f*** yourself." McCord stated he then told Pisoni she was under arrest and he began to reach for her arm for a "come along" hold. McCord stated Pisoni did not comply, tried to escape his grasp, and tried to enter the vehicle. McCord viewed this as an elevated level of resistance and he believes Pisoni's actions rose to Level 3, Dynamic Resistance. McCord averred that Pisoni continued to struggle, did not comply, and when he told her stop fighting, he also tried to use a pain compliance control technique. However, McCord's left ankle rolled at this time and both he and Pisoni fell to the ground.

{¶12} McCord stated he charged Pisoni with obstructing official business and resisting arrest, and that each charge was elevated because of the physical harm he suffered, as his ankle was badly sprained.

{¶13} Also attached to the motion for summary judgment was the affidavit of Griffith. He averred the attached document was an accurate copy of the Alliance Police Department's Standards, Operations, Policies, and Procedural Manual.

{¶14} The manual provides the level of force used, "must be necessary and proportional (i.e. reasonable) to the degree of the threat and resistance under the circumstances existing at the time of its use." Further, that the "level of force must be objectively reasonable as judged by a reasonable officer under the particular circumstances existing at the moment of its use." The manual lists non-physical resistance as verbal expressions, physical gestures, and behaviors that reasonably

convey an intent not to comply with a lawful order. Dynamic resistance is defined as action taken to break away, escape, or evade control with no overt act that would reasonably convey an intent to cause physical harm or damage. The manual further defines reasonable force as "both imminently necessary and proportional to the level of threat and resistance."

{¶15} Pursuant to the manual, "members carry the burden to justify the level of force they use" and factors to be taken into consideration include: armed subject; officer/subject size, gender, age; officer/subject fitness; relative strength; officer/subject skill level; presence of multiple subjects; subject's mental condition; close proximity to firearm/weapon; special knowledge of the subject; injury; ground position; and imminent danger.

{¶16} In the "Resistance-Response Correlation" portion of the manual, it provides that for dynamic resistance, where the level of perceived threat is escape, responses include chemical sprays, pain compliance control tactics, and electro-muscular disruption devices. For non-physical resistance, where the level of perceived threat is loss of control, responses include verbal persuasion, commands, and hands-on physical control (e.g. handcuffing maneuvers).

{¶17} On April 27, 2017, the parties filed a joint stipulation as to exhibits for the motion for summary judgment. The parties stipulated the following evidence and documents were sufficient for Civil Rule 56(E): the point of view camera videos, the dashcam videos, the incident report of Pisoni's arrest, documents from McCord's personnel file, and the Alliance Police Department's use of force policy.

{¶18}  Also on April 27, 2017, Pisoni filed her response to the motion for summary judgment.  Attached to her response was Pisoni's affidavit.  Pisoni claims she was attempting to leave as instructed and that McCord was the physical aggressor.  Pisoni stated when she approached the traffic stop, she was travelling at a normal rate of speed and McCord immediately became verbally aggressive.  Pisoni averred that as she turned to leave as McCord told her to do, she said, "f*** you."  Pisoni stated as she started to open her car door, McCord rushed towards her, grabbed her first, and then told her she was under arrest.  According to Pisoni, McCord never said she was under arrest until after he grabbed her.  Pisoni stated McCord horse-collared her around the neck and pulled her head and neck while yelling "stop resisting," though she was not resisting.  Pisoni averred McCord jerked her head until they both fell to the ground and McCord lunged at her neck, pulled back her shoulders, and aggressively flipped her over.

{¶19}  The deposition of Pisoni was also filed.  Other than the information already contained in her affidavit, Pisoni testified she went to the traffic stop because she was concerned her husband would be arrested for DUI and wanted to get money from him because he had all their money on him for the week.  Pisoni confirmed she told McCord, "f*** you" twice and told him he could not arrest her because "that's her freedom of speech."  She also stated when she walked towards her car, she turned around and flipped McCord the bird with both hands and then he came toward her.

{¶20}  The body camera video shows Pisoni said "f*** you" twice to McCord and, as she neared the front of her vehicle, she turned around and displayed both of her middle fingers at McCord and said "f*** yourself."  McCord asked, "You want to go to jail?  Is that what you want to do?"  Pisoni stated that he can't do that and approached the door to her

vehicle. McCord said, "Actually, it's going to be a yes. Actually, you are obstructing my investigation." Pisoni opened her car door. McCord's hands are not visible in the video, but Pisoni said, "don't you touch me." McCord replied, "you're under arrest." At that point, Pisoni was facing away from McCord and towards her car door. The video next shows McCord placing Pisoni in a "come-along" hold. McCord then attempted to use a pain compliance control tactic. The body camera video stopped as both individuals fell to the ground.

{¶21} The trial court issued a judgment entry on the motion for summary judgment on June 2, 2017. First, the trial court found there were genuine issues of material fact whether McCord acted recklessly as to the claim of false arrest and that a reasonable juror could conclude the arrest was not based on probable cause, but was in retaliation for Pisoni's speech. Second, the trial court found there were genuine issues of material fact as to whether McCord was immune from Pisoni's excessive use of force claim. Finally, the trial court found there were genuine issues of material fact as to whether McCord was immune from Pisoni's malicious prosecution claim. The trial court granted McCord's motion on Pisoni's claims for intentional infliction of emotional distress and spoliation of evidence. The trial court also granted summary judgment to both Griffith and the City of Alliance on all claims.

{¶22} McCord appeals the June 2, 2017 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶23} "I. THE TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT TO MCCORD ON PISONI'S FALSE ARREST CLAIM, AS MCCORD IS STATUTORILY IMMUNE, AND EVEN IF MCCORD ACTED RECKLESSLY, THE

EVIDENCE DEMONSTRATES MCCORD HAD REASONABLE CAUSE TO ARREST PISONI.

{¶24} "II. THE TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT TO MCCORD ON PISONI'S CLAIM FOR EXCESSIVE USE OF FORCE AS PISONI DID NOT MEET HER BURDEN OF PROOF TO ESTABLISH MCCORD'S CONDUCT WAS NOT LAWFUL AND QUALIFIEDLY IMMUNE.

{¶25} "III. THE TRIAL COURT ERRONEOUSLY DENIED MCCORD'S MOTION FOR SUMMARY JUDGMENT CONCERNING PLAINTIFF'S MALICIOUS PROSECUTION CLAIM, HOLDING THEIR MATERIAL ISSUES OF FACT INDICATING MCCORD ACTED WITH MALICE, AND THAT HIS ARREST WAS WITHOUT PROBABLE CAUSE."

*Summary Judgment & Qualified Immunity*

{¶26} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being

entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶27} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999).

{¶28} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

{¶29} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-

moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

{¶30} Generally, an order denying a motion for summary judgment is not a final appealable order subject to appellate review. However, O.R.C. 2744.02(C) states that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of any alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Further, the Ohio Supreme Court has held, "when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia,* 115 Ohio St.3d 77 at syllabus, 2007–Ohio–4839, 873 N.E.2d 878 (2007). Accordingly, the portion of the judgment entry denying McCord's motion for summary judgment based on immunity is a final appealable order.

{¶31} McCord argues he is immune from liability pursuant to R.C. 2744.03(A)(6). A police officer "cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established." *Cook v. Cincinnati*, 103 Ohio App.3d 80, 653 N.E.2d 814 (1st Dist. 1995); R.C. 2744.03. R.C. 2744.03(A)(6) provides that an employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of

the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad

faith, or in a wanton or reckless manner.

**{¶32}** "Malicious purpose" is the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified conduct." *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407, 843 N.E.2d 234 (6th Dist.). "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* "Wanton misconduct" is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result. *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. The Supreme Court of Ohio clarified the recklessness standard in *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, and stated, "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."

**{¶33}** Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407, 843 N.E.2d 234 (6th Dist.). However, where the record lacks evidence demonstrating that the political subdivision employee acted in such a manner, the trial court correctly grants summary judgment. *Id.* Therefore, a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6) immunity unless reasonable minds can only conclude that the employee did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. If reasonable minds could disagree on these

issues, a court may not grant the employee summary judgment based on statutory immunity. *Id.*

I.

**{¶34}** McCord first argues the trial court erred in failing to grant him summary judgment on Pisoni's false arrest claim, as he had a reasonable belief that Pisoni obstructed his investigation and the undisputed evidence shows he had probable cause to arrest Pisoni because she obstructed his investigation.

**{¶35}** The essence of a false arrest is the depriving of a person of his or her liberty without lawful justification. *Tucker v. Kroger Co.*, 133 Ohio App.3d 140, 726 N.E.2d 1111 (10th Dist. 1999). A false arrest claim is made by showing: (1) the intentional detention of the person and (2) the unlawfulness of the detention. *Harvey v. Horn*, 33 Ohio App.3d 24, 514 N.E.2d 452 (10th Dist. 1986).

**{¶36}** McCord charged Pisoni with obstructing official business. R.C. 2921.31(A) governs obstructing official business and it states, "no person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Courts have generally required an affirmative act for the offense of obstructing official business. *State v. Grice*, 180 Ohio App.3d 700, 2009-Ohio-372, 906 N.E.2d 1203 (1st Dist). An affirmative act is defined as any conduct, physical or verbal, that hampers or impedes the officer in the performance of his or her duties. *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215 (1st Dist.). There are no bright line rules for what

hampers or impedes an officer; thus, the court must analyze the defendant's "entire course of conduct." *Id.*

**{¶37}** If a defendant's actions are verbal in nature, then the above analysis implicates the First Amendment. Citizens must be given, "considerable latitude * * * to express their views about the police and their activities." *Kaylor v. Rankin*, 356 F.Supp.2d 839 (N.D. Ohio 2005). Further, the First Amendment gives considerable latitude to citizens to express their views about the police and their activities. *Id.* (finding it is a jury question as to whether crude and rude statements directed to a police officer were protected by the First Amendment); *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359 (if the language does not constitute fighting words, a citizen's verbal assault on a police officer does not, standing alone, constitute criminal conduct). However, while a person has the right to verbally protest a police officer's actions or even to argue or curse at an officer, that person does not have the right to hamper or impede the officer in the performance of his duties. *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215 (1st Dist.); see also *Kaylor v. Rankin*, 356 F.Supp.2d 839 (N.D. Ohio 2005) (finding under Ohio law, there is a violation of obstruction of official business "only when the manner and context of the boisterous statement prevented a public official from carrying out his or her lawful duty"); *Patrizi v. Huff*, 821 F.Supp.2d 926 (N.D. Ohio 2011) (holding it is a jury question when the comments disturbed the officers, but did not transform into verbal conduct and the behavior did not constitute an affirmative act).

**{¶38}** In this case, McCord was acting within his employment as a police officer when he intentionally detained Pisoni, as officers engaging in the detention and arrest of individuals are engaged in a governmental function. *Herbert v. City of Canton*, 5th Dist.

Stark No. 2001CA00281, 2002-Ohio-906. Thus, McCord is immune from liability unless Pisoni can show he acted maliciously, in bad faith, or in a wanton or reckless manner.

{¶39} While McCord averred his attention was not focused on the investigation of her husband due to Pisoni's actions, Pisoni stated McCord first was verbally aggressive towards her and admits that while her comments and actions were crude, they were protected by the First Amendment. In addition, in reviewing the video, there is a question as to whether Pisoni's manner of conduct and context of her statements prevented McCord from carrying out his lawful duty. We thus find this case is analogous to *Hanus v. McNeely*, 5th Dist. Stark No. 95 CA 0274, 1996 WL 74090, in which this Court found the facts raised the issue of wanton or reckless misconduct to the level of jury review.

{¶40} Accordingly, we conclude that reasonable minds could differ, depending on whose version of events a fact-finder determines is more credible and looking at the facts in a light most favorable to Pisoni, as to whether McCord displayed at least a conscious disregard of or indifference to a known or obvious risk of harm that is unreasonable under the circumstances and is substantially greater than negligent conduct and whether McCord had reasonable justification to arrest Pisoni.

{¶41} After reviewing the record in a light most favorable to Pisoni, we find there are genuine issues of material fact regarding whether McCord acted in a wanton or reckless manner with regards to his arrest of Pisoni for obstruction of official business. McCord's first assignment of error is overruled.

II.

{¶42} McCord next contends the trial court erred in not granting summary judgment to McCord on Pisoni's claims for excessive use of force, as Pisoni did not meet

her burden of proof to establish McCord's conduct was not lawful and qualifiedly immune. Specifically, McCord argues Pisoni failed to present any evidence to demonstrate the proper police procedure in arresting her and that there is no evidence to support Pisoni's contention that his use of force was unreasonable.

**{¶43}** Pisoni's second cause of action is a 42 U.S.C. § 1983 claim for use of excessive force in violation of her Fourth Amendment rights. A cause of action exists under Section 1983 when an officer uses excessive force to arrest an individual. *Brown v. Borough of Chambersburgh*, 903 F.2d 274 (3rd Cir. 1990). To establish a Section 1983 claim, a plaintiff must show that: (1) the conduct in question was committed by a person acting under color of state law and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or other federal law. *1946 St. Clair Corp. v. City of Cleveland*, 49 Ohio St.3d 33, 550 N.E.2d 456 (1990).

**{¶44}** McCord claims he had probable cause to arrest Pisoni and the doctrine of qualified immunity applies to shield his actions. Qualified immunity in the context of a Section 1983 claim is a question of federal law. *Herbert v. City of Canton*, 5th Dist. Stark No. 2001CA00281, 2002-Ohio-906, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Police officers who perform discretionary functions are entitled to be shielded from liability for civil damages in a Section 1983 claim as long as their conduct does not violate clearly established federal rights of which a reasonable person would have known. *Id.* Claims that law enforcement officers have used excessive force are analyzed under the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not within 20/20 hindsight. *Graham v. M.S. Connor*, 490 U.S. 386, 109

S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Summerville v. City of Forest Park*, 195 Ohio App.3d 13, 2011-Ohio-3457, 958 N.E.2d 625.  Relevant considerations include the severity of the crime, whether the suspect is an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

{¶45}  Although qualified immunity is an affirmative defense, the ultimate burden is on the plaintiff to show that a defendant is not entitled to qualified immunity.  *Herbert v. City of Canton*, 5th Dist. Stark No. 2001CA00281, 2002-Ohio-906; *Wegener v. City of Covington*, 933 F.2d 390 (6th Cir. 1991).  A defendant bears the initial burden of coming forward with facts to suggest that he was acting within the scope of his discretionary authority during the incident in question.  *Id.*  Thereafter, the burden shifts to plaintiff to establish that the defendant's conduct violated a right so clearly established that any officer in the defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct.  *Id.*  The question is whether Pisoni established McCord's conduct violated a right so clearly established that any officer in McCord's position (objectively measured) would have clearly understood he was under an affirmative duty to refrain from the conduct.  *Id.*, citing *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990).

{¶46}  In this case, there is no dispute that McCord was performing a discretionary function when confronting Pisoni and placing her under arrest.  Though McCord argues Pisoni failed to present any evidence to demonstrate the proper police procedure in arresting her, we disagree.  The Alliance Police Department's Use of Force Policy was admitted into evidence by stipulation of the parties.  Pursuant to this policy, the "level of

force must be necessary and proportional (i.e. reasonable) to the degree of threat and resistance under the circumstances existing at the time of its use." The policy further addresses the resistance-response correlation. For "dynamic resistance," when the perceived threat is escape, the possible responses include pain compliance control tactics, chemical sprays, and electro-muscular disruption devices. For "non-physical resistance," responses include verbal persuasion, commands, and handcuffing maneuvers.

{¶47} McCord averred when he told Pisoni she was under arrest, she did not comply, as she tried to escape his grasp and enter the vehicle. McCord stated he viewed this as an elevated level of resistance, or "dynamic resistance." McCord further averred Pisoni continued to struggle and, when she did not comply, he tried to use a pain-control technique when his left ankle rolled and they both fell to the ground. We find Pisoni presented evidence contradicting this testimony. Pisoni averred that as she started to open the car door to leave, McCord rushed towards her, grabbed her first, jabbed her in her side, and then told her she was under arrest. Pisoni stated she was not resisting arrest. Pisoni averred McCord horse-collared her around her neck, pulled her head and neck, jerked her head until she fell to the ground, lunged at her neck, pulled back her shoulders, and aggressively flipped her over. In the body cam video, Pisoni is heard to say "don't you touch me" before McCord states that she is under arrest. However, it is not clear from the video whether McCord physically touched or restrained her prior to being placed under arrest. Also, the video ends when the two fall to the ground.

{¶48} The contradiction between Pisoni's averments and the averments of McCord creates a genuine issue of material fact. Accepting Pisoni's allegations as true,

we find she presented evidence to create a genuine issue of material fact as to whether an objectively reasonable police officer would have clearly understood he had an affirmative duty to refrain from the conduct. Thus, there is a genuine issue of material fact as to whether McCord is entitled to qualified immunity. See *Alley v. Bettencourt*, 134 Ohio App.3d 303, 730 N.E.2d 1067 (4th Dist. 1999). McCord's second assignment of error is overruled.

III.

{¶49} In his third assignment of error, McCord argues the trial court erroneously denied his motion for summary judgment concerning Pisoni's malicious prosecution claim. Specifically, McCord contends the trial court did not reference any evidence in its determination and the fact that Pisoni was indicted created a rebuttable presumption of probable cause.

{¶50} The tort of malicious prosecution protects a criminal defendant's right to recover damages caused by misuse of criminal actions. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990). To sustain an action for malicious prosecution, a plaintiff must establish: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in his favor. *Ash v. Ash*, 72 Ohio St.3d 520, 651 N.E.2d 945 (1995). Actions for malicious prosecution have been met with disfavor by Ohio courts, which have allowed recovery only when a plaintiff fully complies with the requirements of such an action. *Dailey v. First Bank of Ohio*, 10th Dist. Franklin No. 04AP-1309, 2005-Ohio-3152. Thus, a plaintiff's failure to establish any one element by a preponderance of the evidence is fatal to a malicious prosecution claim. For the purposes of malicious prosecution, "malice" is defined as "an

improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 564 N.E.2d 440 (1990). In this case, it is undisputed that the criminal prosecution was terminated in Pisoni's favor.

{¶51} The "gist" of an action for malicious prosecution is lack of probable cause. *Id.* If the plaintiff cannot show a lack of probable cause, the claim for malicious prosecution fails as a matter of law. *Barnes v. Meijer Dept. Store*, 12th Dist. Butler No. CA2003-09-246, 2004-Ohio-1716. For purposes of malicious prosecution, probable cause is defined as a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Huber v. O'Neill*, 66 Ohio St.2d 28, 419 N.E.2d 10 (1981). Lack of probable cause generally becomes the essence of a malicious prosecution because malice may be inferred in the absence of probable cause. If probable cause exists, no action for malicious prosecution will lie, even if the plaintiff can demonstrate actual malice. *Agner v. The Kroger Co.*, 3rd Dist. Defiance No. 4-83-11, 1984 WL 8099.

{¶52} The determination of whether a criminal prosecution was initiated or continued in the absence of probable cause entails inquiry into the facts and circumstances known to or reasonably within the contemplation at the time of the instigation of criminal proceedings. *McFinley v. Bethesda Oak Hospital*, 79 Ohio App.3d 613, 607 N.E.2d 936 (1st Dist. 1992). In reviewing whether McCord had probable cause to arrest Pisoni, we must determine whether the facts known to McCord at the time of the arrest would warrant a person of reasonable caution to believe that an offense had been committed. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223 (1964).

**{¶53}** McCord argues the trial court failed to consider and apply the rebuttable presumption that the indictment of Pisoni created. The return of an indictment by a grand jury raises a rebuttable presumption that probable cause existed for the institution of the prosecution. *Adamson v. May Co.*, 8 Ohio App.3d 266, 456 N.E.2d 1212 (8th Dist. 1982). In order to overcome this presumption, the plaintiff must provide substantial evidence that the grand jury proceeding received perjured testimony or was otherwise significantly irregular. *Id.* A plaintiff may also rebut a presumption of probable cause by introducing evidence of a substantial nature which counterbalances the presumption. *Petty v. Kroger Food and Pharmacy*, 10th Dist. Franklin No. 07AP-92, 2007-Ohio-5098.

**{¶54}** In this case, Pisoni claims McCord maliciously prosecuted her for the felony criminal charge of obstruction of justice. However, the grand jury did not indict Pisoni on that charge. Rather, the grand jury indicted her on the misdemeanor charge of disorderly conduct. McCord does not cite to any authority applying the rebuttable presumption of probable cause when a grand jury indicts on a lesser offense than what was originally charged. Further, for purposes of malicious prosecution, probable cause and thus the accompanying rebuttable presumption focus on the reasonable ground of suspicion and circumstances to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged, not a lesser offense. See *Huber v. O'Neill*, 66 Ohio St.2d 28, 419 N.E.2d 10 (1981). In addition, given the testimony of Pisoni, and accepting her allegations as true for purposes of summary judgment, we find there is a genuine issue of material fact as to whether Pisoni presented evidence of a substantial nature that the charge was a reaction to Pisoni's insults, which counterbalances the presumption.

**{¶55}** There are genuine issues of material fact as to whether McCord had probable cause to charge Pisoni with felony obstruction of justice and whether he acted with malice in instituting the prosecution for purposes of statutory immunity. As detailed above, Pisoni's version of events differs from McCord's version of events and issues of credibility are to be decided by the trier of fact. See *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359. McCord's third assignment of error is overruled.

**{¶56}** Based on the foregoing, McCord's assignments of error are overruled. We find there are genuine issues of material fact as to whether McCord is entitled to statutory immunity. The June 2, 2017 judgment entry of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur