[Cite as *Lacey v. Ohio Aud. of State*, 2019-Ohio-4266.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Wanda L. Lacey,                              :

        Plaintiff-Appellant,          :           No. 19AP-110
                                             (Ct. of Cl. No. 2017-00868JD)
v.                                           :

Ohio Auditor of State,                       :           (REGULAR CALENDAR)

        Defendant-Appellee.           :

---

D E C I S I O N

Rendered on October 17, 2019

---

**On brief:** *Kerrigan, Boller, Griffis & Link Co., L.P.A.,* and *Royce A. Link*, for appellant. **Argued:** *Royce A. Link.*

**On brief:** *Dave Yost*, Attorney General, *Lee Ann Rabe*, and *Peter E. DeMarco*, for appellee. **Argued:** *Lee Ann Rabe.*

---

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Wanda L. Lacey, appeals from a judgment of the Court of Claims of Ohio granting the motion for summary judgment filed by defendant-appellee, Ohio Auditor of State ("auditor"). For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} From December 2, 2009, until November 19, 2015, Lacey was the fiscal officer, tax administrator, and board of public affairs clerk for the village of New Madison, Ohio. In those roles, Lacey processed utility and tax payments, administered payroll, and handled accounts payable.

{¶ 3} In November 2015, the auditor began to investigate Lacey based on information obtained during a routine audit of New Madison. For this special audit, Nicole

Beckwith was appointed as the investigator, and Elizabeth Akers was assigned as the audit manager.

{¶ 4}   Upon the completion of the investigation and audit, Beckwith submitted a final investigative report dated October 24, 2016 to Drake County Prosecutor Kelly Ormsby. In this report, Beckwith found the following:  adjustments were made, in the amount of $4,195.00, to New Madison utility customers' accounts with no corresponding deposits to New Madison's bank account; 51 utilities receipts were listed on New Madison's computer system without corresponding deposits, in the total amount of $10,685.00; New Madison income tax returns received totaling $55.89 did not have corresponding deposits; Lacey received a $6,149.00 bonus check without documented New Madison council approval; and there were New Madison debit card charges for unallowable purchases in the amount of $650.00.  Based on these findings, Beckwith requested consideration for five counts of theft in office by Lacey.

{¶ 5}   The county prosecutor presented the matter to a grand jury, which, on December 27, 2016, returned an indictment for one count of theft in office in the amount of $21,734.89, a third-degree felony.  On September 25, 2017, the indictment was dismissed at the request of the county prosecutor.

{¶ 6}   In October 2017, Lacey filed suit against the auditor asserting claims of malicious prosecution, defamation, and intentional infliction of emotional distress.  Lacey's complaint alleges she was charged with theft in office despite there being an absence of probable cause that she committed such an offense.  According to Lacey, the absence of probable cause is discernable from an examination of New Madison administrative and financial records and the final investigative report.  In December 2017, the auditor moved to dismiss the complaint pursuant to Civ.R. 12(B)(6).  The trial court granted the motion to dismiss insofar as Lacey alleged defamation based on a theory of negligent publication, and it otherwise denied the motion.

{¶ 7}   In December 2017 and October 2018, Lacey moved for a determination as to whether auditor employees Beckwith and Akers were entitled to personal immunity under R.C. 9.86 and 2743.02(F).

{¶ 8}   In December 2018, the auditor filed a motion for summary judgment, arguing each of Lacey's claims were barred by the doctrine of absolute privilege.  The

motion additionally stated that even if they were not barred by the absolute privilege doctrine, the malicious prosecution claim failed because of lack of malice and the existence of probable cause and her intentional inflection of emotional distress claim failed because there was no extreme and outrageous conduct.  In response to the auditor's summary judgment motion, Lacey did not challenge the auditor's assertion that the doctrine of absolute privilege barred the claims.  Instead, Lacey's arguments in opposition to the motion were limited to whether evidence supported her malicious prosecution claim, with a particular emphasis on whether evidence demonstrated the absence of probable cause.

{¶ 9}  In February 2019, the trial court granted the auditor's summary judgment motion based on its finding that Lacey's claims were all barred by the absolute privilege doctrine.  The trial court also concluded that Beckwith and Akers were entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) because there was no evidence that Beckwith or Akers acted manifestly outside the scope of their employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 10}  Lacey timely appeals.

## II.  Assignments of Error

{¶ 11}  Lacey assigns the following errors for our review:

> [1.] The trial court erred in its finding that Defendant/Appellee was entitled to summary judgment based upon an absolute privilege against civil liability.

> [2.] The trial court erred in finding that Defendant/Appellee's employees were entitled to civil immunity based upon its finding that no evidence has been presented from which the trier of fact could reasonably conclude that Defendant/Appellee's employees acted manifestly outside the scope of their employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner.

## III.  Discussion

{¶ 12}  Lacey's first assignment of error alleges the trial court erred in granting summary judgment in favor of the auditor based on the doctrine of absolute privilege.  This assignment of error is not well-taken.

{¶ 13}  Lacey's claims against the auditor were based on the communications made to the county prosecutor, primarily via the final investigative report, alleging she committed

theft in office. The trial court granted summary judgment in favor of the auditor as to all of Lacey's claims based on its conclusion that the absolute privilege doctrine barred each of the claims. While Lacey's first assignment of error challenging this conclusion is broad, she limits the argument in her brief to only the malicious prosecution claim. Accordingly, we similarly focus our analysis of the first assignment of error to a review of the trial court's disposition of her malicious prosecution claim on the basis of the absolute privilege doctrine.[1]

{¶ 14} The tort of malicious prosecution involves the misuse of the criminal and civil process. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, ¶ 9. To succeed on a malicious prosecution claim, the plaintiff must prove three elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990). Actions for malicious prosecution have been met with disfavor by Ohio courts. *Dailey v. First Bank of Ohio*, 10th Dist. No. 04AP-1309, 2005-Ohio-3152, ¶ 14. "Lack of probable cause generally becomes the essence of a malicious prosecution action because malice may be inferred in the absence of probable cause." *Petty v. Kroger Food and Pharmacy*, 10th Dist. No. 07AP-92, 2007-Ohio-5098, ¶ 20.

{¶ 15} The doctrine of absolute privilege is a form of immunity. *Marcum v. Rice*, 10th Dist. No. 98AP-717 (Nov. 3, 1998). " 'Upon certain privileged occasions * * * the law recognizes that false, defamatory matter may be published without civil liability.' " *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (1994), quoting *Bigelow v. Brumley*, 138 Ohio St. 574, 579-80 (1941). This privilege is either absolute or qualified. *Mettke v. Mouser*, 10th Dist. No. 12AP-1083, 2013-Ohio-2781, ¶ 6. The distinction "is that the absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity; whereas the presence of such circumstances will defeat the assertion of a qualified privilege." *Bigelow*

---

[1] Lacey argues that because the auditor did not plead absolute privilege as an affirmative defense, the trial court should not have considered it in resolving the auditor's motion for summary judgment. As set forth above, in moving for summary judgment, the auditor asserted, inter alia, that Lacey's claims were barred by the absolute privilege doctrine. In response to the auditor's motion for summary judgment, Lacey did not assert that the auditor's failure to timely raise this doctrine as an affirmative defense precluded the auditor from relying on it at the summary judgment stage. Therefore, this argument is waived. *Betz v. Penske Truck Leasing Co., L.P.*, 10th Dist. No. 11AP-982, 2012-Ohio-3472, ¶ 34.

at 579; *see Costanzo v. Gaul*, 62 Ohio St.2d 106, 108-09 (1980) ("complete protection is afforded by absolute privilege, whereas a qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact.").

{¶ 16} The application of the absolute privilege doctrine is "generally limited to legislative and judicial proceedings, and other acts of state, such as communications made in the discharge of a duty of the Governor and heads of the executive departments of a state." *Costanzo* at 109. With respect to this doctrine's application in the judicial proceeding context, in *DiCorpo*, the Supreme Court of Ohio held that "[a]n affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported." *DiCorpo* at syllabus. Following this principle, this court has found the absolute privilege doctrine to apply when university officials reported alleged illegal conduct of a student, when a bank reported alleged illegal conduct of an employee, and when an individual reported alleged illegal conduct of another individual. *See Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043 (defamation); *Lee v. Upper Arlington*, 10th Dist. No. 03AP-132, 2003-Ohio-7157 (defamation, malicious prosecution, and other claims based on communications); and *Haller v. Borror*, 10th Dist. No. 95APE01-16 (Aug. 8, 1995) (malicious prosecution).

{¶ 17} Here, the trial court, relying on *DiCorpo, Lee,* and *Haller*, concluded the auditor was entitled to an absolute privilege against Lacey's claims because the reporting of the alleged illegal conduct was part of a judicial proceeding. We agree. According to Lacey, these cases are distinguishable because the auditor and his employees functioned as investigators in evaluating possible illegal conduct. While it is true that the auditor's office acted in an investigative capacity in reviewing materials and information, Lacey sued the auditor based on the communication of those findings to the county prosecutor, that is, based on the auditor's reporting function. The auditor, through his employee, reported Lacey's alleged illegal conduct to the county prosecutor, and the statements that form the basis of Lacey's action against the auditor related to the activity reported. Lacey also argues that these cases are distinguishable because the county prosecutor here was required to bring the matter before a grand jury based on R.C. 117.29. This statute states in part that

when an audit report includes a finding of "any malfeasance or gross neglect of duty on the part of any public official for which a criminal penalty is provided," the appropriate county prosecutor must be notified, "and the prosecuting attorney shall, within one hundred twenty days, institute criminal proceedings against the public official."  But Lacey's contention that this statute removes discretion from the county prosecutor previously has been rejected.  *See Woodman v. Jones*, 103 Ohio App.3d 577 (8th Dist.1995) (characterizing R.C. 117.29 as "advisory rather than mandatory" despite the use of the word "shall").  Thus, the trial court properly concluded the auditor was not subject to liability because the alleged tortious conduct was part of a judicial proceeding for the purpose of applying the absolute privilege doctrine.

{¶ 18}  Moreover, even if not protected by the absolute privilege doctrine, the auditor was entitled to judgment as a matter of law as to the malicious prosecution claim because Lacey failed to present evidence reasonably establishing that the auditor acted with malice or lacked probable cause in making the statements to the county prosecutor alleging Lacey's illegal conduct.

{¶ 19} As pertinent to her malicious prosecution claim, Lacey asserts the auditor acted with malice because there was no probable cause to bring the criminal case against her.  The determination of whether a criminal prosecution was initiated or continued in the absence of probable cause entails inquiry into the facts and circumstances known to or reasonably within the contemplation of the defendant at the time of the instigation of criminal proceedings.  *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 616-17 (1st Dist.1992).  Probable cause does not, however, depend on whether the plaintiff was guilty of the offense charged.  *Waller v. Foxx*, 1st Dist. No. C-810568 (Oct. 6, 1982).  The defendant need not have evidence sufficient to ensure a conviction; he is required only to have evidence sufficient to justify an honest belief of the accused's guilt.  *Brown v. Crestmont Cadillac*, 8th Dist. No. 87460, 2006-Ohio-5734, ¶ 14, citing *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 62 (9th Dist.1977).

{¶ 20}  While the issue of probable cause is ordinarily one of fact to be resolved at trial, it may be determined as a matter of law upon a record that allows for only one reasonable conclusion.  *Petty*, *supra*, at ¶ 21.  Furthermore, the return of an indictment by a grand jury raises a rebuttable presumption that probable cause existed for the institution

of a prosecution, and it is the plaintiff's onus to rebut such a presumption. *Dailey* at ¶ 16. In order to overcome this presumption, the plaintiff must provide substantial evidence that the grand jury proceeding received perjured testimony or was otherwise significantly irregular. *Pisoni v. McCord*, 5th Dist. No. 2017CA00111, 2018-Ohio-64, ¶ 53. Because grand jury evidence is usually secret, a plaintiff may also rebut a presumption of probable cause by introducing evidence of a substantial nature which counterbalances the presumption. *Id.*

{¶ 21} Based on the evidence presented to the grand jury, Lacey was charged with theft in office, thus creating a rebuttable presumption that probable cause existed to initiate criminal proceedings. In support of her malicious prosecution claim against the auditor, Lacey failed to present any evidence that the grand jury proceeding received perjured testimony or was otherwise significantly irregular. Moreover, Lacey did not present substantial evidence that counterbalanced the presumption resulting from her indictment. Instead, Lacey essentially asserted that the final investigative report contained flaws that were the result of a careless, deficient, or otherwise inadequate investigation. According to her, the auditor's final investigative report did not account for certain New Madison records that arguably called into doubt the report's conclusions, and, as a result, this exculpatory evidence was not provided to the prosecutor who took the case to the grand jury. In particular, she asserts the auditor did not, in matching payments to New Madison with deposit slips, account for all deposit information that was available for inspection. She also asserts the auditor did not adequately review the village council minutes pertaining to her second bonus. Similarly, she contends the auditor did not take sufficient steps in investigating the questionable debit card charges. But a malicious prosecution claim cannot be based on the defendant's alleged negligence. *See Foley v. Univ. of Dayton*, 150 Ohio St.3d 252, 2016-Ohio-7591, ¶ 14 (declining to recognize tort of negligent misidentification, noting that to so recognize "would diminish the tort of malicious prosecution to a mere negligence action"); *Price v. Austintown Local School Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 2008-Ohio-4514, ¶ 22 (7th Dist.) ("malicious prosecution is an intentional tort"). Thus, we find that Lacey failed to present evidence to overcome the presumption of the existence of probable cause that arose from her indictment. Consequently, her malicious prosecution claim fails as a matter of law.

{¶ 22} For these reasons, the auditor was entitled to summary judgment on Lacey's claim of malicious prosecution. Accordingly, we overrule her first assignment of error.

{¶ 23} Lacey's second assignment of error challenges the trial court's determination that Beckwith and Akers were entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F). This assignment of error also lacks merit.

{¶ 24} Whether a state employee is entitled to personal immunity from liability under R.C. 9.86 involves a question of law, and this is an issue over which the Court of Claims has exclusive, original jurisdiction. *Nease v. Medical College Hosp.*, 64 Ohio St.3d 396, 400 (1992); *Johns v. Univ. of Cincinnati Med. Assocs.*, Inc., 101 Ohio St.3d 234, 2004-Ohio-824. The procedure for determining this immunity is set forth in R.C. 2743.02(F). This statute provides that a "civil action against an officer or employee" alleging that "the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities" or alleging that "the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner" first must "be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity" pursuant to R.C. 9.86 "and whether the courts of common pleas have jurisdiction over the civil action." R.C. 2743.02(F).

{¶ 25} R.C. 9.86 provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 26} The term "scope of employment" is a concept that "denotes an agency relationship in which the agent or employee is engaged in an activity that is logically related to the business of the principal or employer." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 15. For purposes of R.C. 9.86 immunity, a state employee

acts within the scope of employment if the employee's actions are " 'in furtherance of the interests of the state.' "  *Id.*, quoting *Conley v. Shearer*, 64 Ohio St.3d 284, 287 (1992).

{¶ 27}  "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified."  *Wrinn v. Ohio State Hwy. Patrol*, 10th Dist. No. 11AP-1006, 2013-Ohio-1141, ¶ 12.  "Common law malice connotes hatred, ill will or a spirit of revenge."  *Marinucci v. Ohio Dept. of Transp.,* 10th Dist. No. 99AP-500 (Jan. 18, 2000).  "Bad faith" generally implies or involves " 'actual or constructive fraud or a design to mislead or deceive another.' "  *Wrinn* at ¶ 12, quoting *Caruso v. State*, 136 Ohio App.3d 616, 621 (10th Dist.2000). " 'Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' " *Wrinn* at ¶ 12, quoting *Caruso* at 621. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result."  *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph three of the syllabus.  Lastly, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at paragraph four of the syllabus.

{¶ 28}  Here, the trial court resolved that no evidence was presented from which a trier of fact reasonably could conclude that Beckwith or Akers acted manifestly outside the scope of their employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner.  Consequently, it concluded that Akers and Beckwith were entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F).  Lacey argues Akers and Beckwith acted maliciously in pursuing her prosecution for theft in office because there exists readily apparent evidence that casts doubt on the final investigative report's conclusions.  However, Lacey's assertion that the inquiry into possible illegal conduct was inadequate does not reasonably demonstrate that Akers or Beckwith willfully or deliberately ignored exculpatory evidence, or that they had serious doubt as to the truth of the allegations made in the final investigative report.  At most, the record arguably shows that certain facts or details were negligently overlooked or not fully considered as part of the investigation and forensic audit of New Madison's records.

{¶ 29} Because the evidence supported the trial court's determination that Beckwith and Akers were entitled to personal immunity from civil suit pursuant to R.C. 9.86 and 2743.02(F), we overrule Lacey's second assignment of error.

## IV. Disposition

{¶ 30} Having overruled Lacey's first and second assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

KLATT, P.J., and NELSON, J., concur.

NELSON, J., concurs in part, concurs in judgment.

{¶ 31} Given the procedural posture of this case and because we conclude on the summary judgment merits that Ms. Lacey "failed to present evidence reasonably establishing that the auditor acted with malice or lacked probable cause in making the statements to the county prosecutor alleging * * * illegal conduct," and affirm the trial court's dismissal of the malicious prosecution claim on that ground, *see* Majority Decision at ¶ 18-21, *supra*, I would not reach the question of whether absolute privilege bars this claim even if it could be shown that the government investigators acted in bad faith and with knowledge that their allegations were false.  In all other respects, I agree with the majority's analysis.

{¶ 32} Therefore, I join in the judgment affirming the judgment of the Court of Claims of Ohio, and I join in the majority decision apart from ¶ 17.

_____